[Civ. No. 540. Third Appellate District.—July 10, 1909.]

## J. M. RUTH, Respondent, v. LOTTA RUTH KRONE et al., Appellants.

ACTION ON NOTE—PRIMA FACIE CASE—PRESUMPTION OF CONSIDERATION —BURDEN OF PROOF.—In an action on a promissory note, the plaintiff makes a *prima facie* case by producing the note in evidence and proving nonpayment. The presumption is that the note is supported by a sufficient consideration; and the burden is upon the defendants to overcome such presumption and to show a want of consideration for the note.

ID.—BURDEN ON PARTY HAVING AFFIRMATIVE.—The burden of proof is always on the party maintaining the affirmative of the issue.

ID.—ATTACK UPON CONSIDERATION—EVIDENCE FOR DEFENDANTS—BURDEN UPON PLAINTIFF.—Where the answer took issue upon the allegations of the complaint and the defendants filed a cross-complaint, setting up a want of consideration for the note sued upon, and offered evidence in support thereof, the burden is upon the plaintiff to show by the preponderance of evidence that there was a sufficient consideration for the note.

ID.—PRESUMPTION OF CONSIDERATION AS EVIDENCE.—The presumption of consideration has effect as positive evidence in favor of the plaintiff.

ID.—CONFLICTING EVIDENCE—FINDING IN FAVOR OF PRESUMPTION.— When the evidence is otherwise conflicting between plaintiff and defendants upon the question of consideration for the note, the jury were authorized to find in favor of the presumption of consideration as against the witnesses in favor of the defendants, and that plaintiff has the preponderance of evidence in his favor by virtue of such presumption.

ID.—SUFFICIENCY OF CONSIDERATION—WAIVER OF RIGHT TO CONTEST SECOND WILL—DEVISE OF PLAINTIFF UNDER PRIOR WILL.—Where a devise was made in favor of the plaintiff under a prior will, and a second will devised the whole property to one of the defendants, the plaintiff had the legal right to contest the second will on the grounds of incompetency of the deceased to make it and undue influence of said defendant exerted over the deceased, and the waiver of that right of contest constitutes a sufficient consideration for a note given by such defendant to the plaintiff.

ID.—IMMATERIAL FACT—FIRST WILL NOT FILED FOR PROBATE—AGREEMENT FOR SETTLEMENT.—It is an immaterial fact upon the question of consideration that the first will had not been filed for probate, and that the second will had been admitted to probate, when there

is evidence to show that it was part of the agreement of settlement that the first will should not be filed for probate.

ID.—ULTIMATE SUCCESS OF CONTEST IMMATERIAL.—It is not material to show that a contest of the will waived by the settlement upon which the note was founded would ultimately have been successful.

ID.—PLEADINGS—ANSWER TO CROSS-COMPLAINT—SPECIAL DEMURRER— TRIAL UPON MERITS—ERROR CURED.—Although the answer to the cross-complaint was inconsistent, and a special demurrer thereto should have been sustained, yet where the answer as a whole stated a defense to the cross-complaint, and a trial was had upon the merits, which resulted in a verdict for the plaintiff, the error was thereby cured.

ID.—VARIANCE—INCONSISTENCY BETWEEN ANSWER AND EVIDENCE— WEIGHT—PROVINCE OF JURY.—Any variance in evidence of the plaintiff inconsistent with the statements of the answer to the cross-complaint, goes only to the weight of the plaintiff's evidence, which in connection with the presumption in favor of the consideration, raises a question of fact for the determination of the jury, who were authorized to find for the plaintiff, notwithstanding such variance.

ID.—DENIAL OF THREAT TO CONTEST LATER WILL NOT CONCLUSIVE.— The denial in the answer to the cross-complaint of a threat to contest the later will is not conclusive evidence against the right of plaintiff to contest the same and the waiver of that right as a consideration for the note in suit.

ID.—INSTRUCTION.—*Held*, that the charge of the court fairly presented the law of the case, and that there was no error in the refusing of instructions requested for the defendants.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   John Hunt, Judge.

The facts are stated in the opinion of the court.

Daniel A. Ryan, for Appellants.

Otto Irving Wise, and Louis Hirsch, for Respondent.

HART, J.—This is an action on a promissory note for the sum of $2,000, alleged in the complaint to have been executed by the defendant, Lotta Ruth Krone, in favor of and payable to the plaintiff.

The cause was tried by a jury and a verdict rendered in favor of the plaintiff for the face of the note, with legal in-

terest from the date of its maturity, said note, dated June 3, 1903, having been made payable three years after its date, without interest.

Judgment was entered for the plaintiff in accordance with the terms of the verdict.

This appeal is prosecuted from said judgment and from the order denying the defendants a new trial.

The complaint is in the ordinary form of actions for recovery upon promissory notes.

The defendants, by answer, specifically deny the material averments of the complaint, and, moreover, filed a cross-complaint, in which, admitting the execution of the note, they attack the validity of the instrument upon the ground that it is without consideration for its support.

The plaintiff introduced the note in evidence and thereupon rested his case. The note constituted *prima facie* proof of all that it purported to be. The presumption is that the note was supported by a sufficient consideration (Code Civ. Proc., sec. 1963, subd. 21, and Civ. Code, sec. 1614), and the burden of overcoming such presumption or of showing want of consideration sufficient to support the note was cast upon the defendants. (Civ. Code, sec. 1615; *Keating* v. *Morrissey,* 6 Cal. App. 163, [91 Pac. 677].)

Considerable space is devoted in the briefs of counsel for both sides to the discussion of the question of the "shifting of the burden of proof." We fail to appreciate the pertinency of the discussion. It is only elementary to say that the burden of proof is always on the party maintaining the affirmative of the issue. In the case at bar it was incumbent upon the plaintiff to prove the due execution and nonpayment of the note. But when he has made out a *prima facie* case, then he may rest and thus invite the defendant to exhibit whatever defense he may be able to interpose thereto. Our law, as seen, provides (Civ. Code, sec. 1614, *supra*) that a written instrument imports a consideration, and that the burden of showing that such an instrument is without a sufficient consideration to support it rests upon the party seeking to invalidate or avoid it. (Civ. Code, sec. 1615, *supra.*) Therefore, when the plaintiff proved the note and its nonpayment he made out a *prima facie* case upon which he was at liberty to rest until the defendants had introduced proof

showing or tending to show that the note was unsupported
by a sufficient consideration. While the burden was upon
the defendants to dispel the presumption of a sufficient con-
sideration, the burden in its strict sense was upon the plaintiff
to prove his case by a preponderance of the evidence. ''The
two burdens,'' says the supreme court in *Scott* v. *Wood,* 81
Cal. 401, [22 Pac. 872], ''are distinct things. One may
shift back and forth with the ebb and flow of the testimony.''
As is said in Encyclopedia of Law and Practice (Cyc.), vol-
ume 16, page 926: '' 'Burden of proof,' as a phrase, means
either: 1—the necessity of establishing the existence of a cer-
tain fact or set of facts by evidence which preponderates to
the legally required extent, or 2—The necessity which rests
on the party at any particular time during a trial, to create
a *prima facie* case in his own favor, or to overthrow one when
created against him.'' So, in the case at bar, as we have
shown, the plaintiff having made the case required of him,
it became the duty of the defendants to overthrow it, if they
could, by proof sufficient to dispel the presumption which the
law raises in favor of a consideration sufficient to support the
instrument declared upon. Referring to subdivision 2 of
section 2061 of the Code of Civil Procedure, providing that
jurors may be instructed ''that they are not bound to decide
in conformity with the declarations of any number of wit-
nesses which do not produce conviction in their minds, against
a less number, or against a *presumption* or *other* evidence
satisfying their minds,'' the supreme court, in *People* v.
*Milner,* 122 Cal. 179, [54 Pac. 837], says: ''In this is a
distinct recognition of the facts: (1) That a presumption is
evidence; and (2) that it is evidence which may outweigh
the positive testimony of witnesses against it. It has been said
that disputable presumptions are allowed to stand, not against
the facts they represent, but in lieu of proof of the facts,
and that, when the fact is proven contrary to the presump-
tion, no conflict arises, but the presumption is simply over-
come and dispelled. (Citing *Savings etc. Soc.* v. *Burnett,* 106
Cal. 514, [39 Pac. 522].) This is true. Against a proved
fact, or a fact admitted, a disputable presumption has no
weight; but, where it is undertaken to prove the fact against
the presumption, *it still remains with the jury to say whether
or not the fact has been proven, and, if they are not satisfied*

*with the proof offered in its support, they are at liberty to accept the evidence of the presumption.''* (Italics ours.)

The jury in the present cast accepted the evidence of the presumption, supported by the testimony of the plaintiff, as against the other evidence offered to rebut it.  But appellants claim that the jury were not warranted in so doing.

Let us briefly examine the evidence by the light of the rules as we have stated and as we understand them.  The undisputed facts show that the plaintiff and the defendant, Lotta Ruth Krone, are brother and sister, and that after the death of their father, their mother married one J. C. Walker, who, subsequently to said marriage, adopted the defendant, Lotta Ruth Krone, as his own child.  On March 30, 1903, Walker died.  On January 6, 1903, the deceased executed a will, devising all his real property to his three stepchildren (there was another daughter of Mrs. Walker by her first husband) and a nephew in equal shares, and bequeathing his personal property to the three stepchildren, to the exclusion of said nephew.  By the terms of this will the plaintiff was made the executor thereof, to serve as such without bonds.  When this will was executed Walker was in his last illness, being confined to his bed in a hospital in the city of San Francisco. On the nineteenth day of January, 1903—thirteen days after the execution of the first mentioned will—Walker executed another will by which he gave all his property to the defendant, Lotta Ruth Krone, and named her as executrix of said will without bonds.  On the day of Walker's death—March 30, 1903—this latter will was filed for probate and was admitted to probate on the tenth day of April, 1903.

To dispel the presumption that the note upon which this action is founded is supported by a sufficient consideration, the defendant, Lotta Ruth Krone, testified, in substance, that, immediately upon the death of Walker, and upon learning of the execution by the deceased of the later will, the plaintiff began to ply the defendant, Lotta, with threats of trouble in the form of litigation unless she made a settlement with him; that he represented to her that the fact that she had been adopted by the deceased gave her no right to participate in the fruits of the estate left by Walker superior to his right to share therein as a stepson; that, as a stepson, he was entitled to one-third of said estate; that she received nothing for the

note, but executed it "out of generosity" and to "prevent
annoyances." She declared, in explanation of what she
meant by her answer, that she made the note "to prevent
annoyances," that she executed the instrument to prevent
"being pestered to death by his requests for some kind of a
settlement." At first, she testified, he asked for only $1,500,
but subsequently demanded $2,000, for which, finally, she
gave him the note in dispute. The plaintiff thereupon, so
said defendant further declared, agreed not to contest the
later will. She declared that in none of the conversations
with her brother in which he demanded a settlement did he
make any reference to the will executed by the deceased on
the 6th of January, 1903, and, therefore, made no claim that
he was entitled to share in the estate of the deceased by rea-
son of the provisions of said will.

The plaintiff, testifying in rebuttal, stated that he had,
after the death of Walker, consulted attorneys Reuben Lloyd
and E. W. Hill with reference to a contest of the later will
of the deceased; that his sister, Mrs. Krone, had telephoned
to him on the day she executed and delivered the note to
plaintiff—June 3, 1903—requesting him to call at the Alcalde
apartment house in San Francisco, "saying that she would
like to talk to me. I went there; Mr. Krone, the husband
of my sister, was present in the apartment when the note was
executed. My sister furnished the paper and ink. I never
asked for $1500 and raised it. . . . When she sent for me and
when I got to her apartments, she stated that she wanted
to settle the difficulty between us, and I sat and listened to
her. She said, 'Well, Jack, you are entitled to your interest
in this will that you claim,' and she said, 'I want to continue
the friendly feeling that a brother and sister should have,
and I would like to settle this matter now,' and I told her
that was agreeable to me; and so she told me of her condi-
tion then, and that she was going to build flats in Fresno, and
use the money that was in the bank, and borrow money from
her father in law, and that she was perfectly willing to pay
me if she had the money on hand. I told her that I was in
no need of money then, and that I was perfectly willing to
wait. She felt that she was not able to pay more than two
thousand, and she volunteered that amount; I had not made
any proposition. I accepted her offer then and there. I

received nothing from the estate of Mr. Walker directly or indirectly, other than this promissory note. . . . She said that we were entitled to what was coming to us, my other sister and myself, but she thought it was hard that a distant nephew like Axon Walker should get any part of the money; she said that she wanted to keep the money among her own relatives.''

Plaintiff further testified that, immediately upon hearing of the death of Walker, he went to the city hall in San Francisco for the purpose of filing for probate the will of January 6, 1903, but did not do so because the said defendant had already filed a will (referring to the later will of the deceased), and because, also, he desired to consult an attorney. He denied saying to his sister that as a stepson of deceased he was entitled to a share in the estate. He declared that he never threatened the defendant, Lotta, but said that ''I told her husband that I was going to contest the will, and he told her.'' The note, he said, was given by Lotta upon the agreement that he ''would not petition for the probate of the will,'' referring to the first will executed by deceased, and that, upon receiving the note, he ceased to take further steps in the matter. The plaintiff further testified: ''She gave me a note for $2,000, and for reasons of my own, I wished to take the note and compromise the whole matter in that way. The reasons were that I was willing to compromise because Mr. Walker was moved one night by Mrs. Krone from St. Mary's Hospital, without anybody's knowledge. He was so ill at the hospital that the doctors said that if he was moved he would die in the ambulance. I was told by the nurse that although Mr. Walker was as a rule given but one powder, they gave him two the night he made out the will, which my sister had, and that he was in no condition to execute that will. Further, because the nurse told me that Mr. Krone, my sister's husband, had blackened himself and introduced himself to Mr. Walker as his brother, and on another occasion had brought in a doll made of rags and introduced the doll as the child of my sister, and I did not want to give information to distant relatives so that they could attack us upon other property which was not involved, and rather than give such testimony in law, I promised to take that money, rather than to have any trouble.'' He said that he had intended to file the will of January 6, 1903, up to the time that

his sister compromised or settled their differences by executing the note in dispute, and then, having agreed as a consideration for said note to stop further proceedings on his part, he abandoned any intention he might have had to file said will.

We have thus given a substantial epitome of the important and vital facts to which both the defendant, Lotta, and the plaintiff testified upon the issue tendered and submitted by the pleadings. The testimony of these two parties constituted all the evidence received at the trial, except certain documentary evidence in the form of certain deeds and the two wills, etc.

It will readily be observed that there is a marked variance between the testimony given by the defendant, Lotta Ruth Krone, and that of the plaintiff upon the vital question whether the note in controversy was executed and given upon a valid or sufficient consideration, and we think the case as to that fact, is, therefore, clearly within the rule as to conflicting evidence.

Counsel for the appellants suggest some dozen or more reasons for which, he claims, the judgment and order should be reversed. We have carefully gone over all the grounds for a reversal thus presented, but we consider it necessary to give particular attention to a few of them only.

The claim that the evidence discloses that the note was given without a valid consideration for its support is based not only upon the testimony given by the defendant, Lotta, but also upon the testimony of the plaintiff and alleged variances between his testimony and certain allegations contained in the answer to the cross-complaint filed by defendants, the purpose of which was to secure a decree that the note be surrendered for cancellation upon the ground that it was void for want of a valid consideration to support it.

The answer to the cross-complaint we would not commend as an exhibition of model pleading of the negative kind. Its denials seem to be not only inconsistent with each other, but some of them, if taken alone, would fall far short of tendering an issue upon the important question involved in the litigation, and upon the solution of which alone hinges the determination of the proposition whether the plaintiff is or is not entitled to recover upon the note upon which he declares.

The theory of the defendants, as evidenced by the averments of the cross-complaint, seems to have been that the plaintiff was without any right whatever to contest the later will of the deceased, notwithstanding the fact that in the earlier will of Walker the plaintiff was named as one of the four devisees and legatees, to share equally with the others so named in said will in the estate of the deceased. The cross-complaint alleges: "That on or about the 3d day of June, 1903, said plaintiff, J. M. Ruth, threatened to contest the last will and testament of said J. C. Walker, deceased, unless said defendant, Lotta Ruth Krone, executed and delivered to him the said promissory note mentioned in said amended complaint; that said Lotta Ruth Krone thereupon and in consideration of said plaintiff forbearing to contest said will, and in ignorance of the fact that said plaintiff had no right to contest said will executed to plaintiff said promissory note set forth in said amended complaint; that said agreement of said plaintiff to forbear contesting said will was the sole consideration for the execution of said promissory note; that said plaintiff was not a blood or any relation of said J. C. Walker, save and excepting that the said J. C. Walker was at one time married to the mother of the plaintiff," and that his said mother died before the death of said J. C. Walker; "that said plaintiff was not a party interested in said will or in the estate of said deceased and had no right to contest said will and could not have contested said will."

The answer to the cross-complaint first specifically denies all the foregoing averments, and then denies that plaintiff was not a party interested in the last will and testament of the deceased or in the estate of said deceased; "and he denies that he had no right to contest the last will and testament of the said J. C. Walker, and in this behalf this plaintiff alleges that, within a few weeks of the death of the said J. C. Walker the said J. C. Walker made, published and executed his last will and testament, wherein and whereby, among other things, he bequeathed a very large portion of his estate to this plaintiff, and in which he named this plaintiff as an executor thereof; and that the alleged will produced by said defendant Lotta Ruth Krone was not the last will and testament of the said J. C. Walker, deceased, and that the said promissory note in the amended complaint set forth was made and de-

livered to this plaintiff by the defendant, Lotta Ruth Krone, for a good and valuable . consideration other than in said amended cross-complaint set forth.''

The answer, taken as a whole, states a defense to the claims of the cross-complaint. It is not easy to understand why the plaintiff denied that he threatened to contest the later will of the deceased, since the promise to waive his right to contest said will could be the only valid consideration for the support of the note, unless the denial was intended only to negative the charge, if such was its meaning, that such ''threat'' was made in its offensive or illegal sense, or to deny, as plaintiff denied when testifying, that he made the alleged ''threat'' to the defendant, Lotta, personally. But whether the special demurrer should have been sustained or not, the answer was, in any event, good as against a general demurrer. And the trial of the main question having been fully gone into under the issues as thus framed, no objection being made to the evidence addressed thereto, except as to the form and competency of certain questions, the error in overruling the special demurrer was thereby cured.

The plaintiff, as we have seen, testified to the effect that he had consulted his attorneys with a view of taking proceedings to contest the later will of the deceased; that he had reason to believe that said will was not, in law, the last will and testament of the deceased, and that such reason was founded upon the circumstances under which he had been informed said alleged will had been made and executed by the deceased; that he had informed Lotta's husband of his intention to contest the said will, and that such intention had been communicated to Lotta by her husband; that, upon receiving the note in dispute from his sister, he abandoned further intention to contest said will, and that that was the agreement upon his part upon which the note was executed and delivered to him. It is now claimed by counsel for the appellants that this testimony by the plaintiff is inconsistent with the denials of his answer to the cross-complaint, and that the effect of such denials is to impeach his testimony given at the trial. The claim that such inconsistency exists has, apparently, some foundation. As a *pleading*, as we have before said, the answer is not a model specimen, and the special demurrer thereto should have been sustained upon the ground of the

uncertainty and ambiguity of its denials; but when a court or jury is called upon to consider certain allegations of fact in a pleading. as evidence in the case, and which allegations are inconsistent with other allegations setting up a good cause of action or a meritorious defense, such facts are to be so considered by and subject to the same rules by which evidence of any other character is to be considered. Assuming that the denial in the answer to the cross-complaint that plaintiff ever threatened to contest the later will of the deceased, etc., is to be construed as meaning what the language of the averment or denial appears upon its face to imply, yet that declaration in the answer, when viewed with the other allegations therein, is not necessarily conclusive evidence upon the point, no more than would be the declaration made in a different form. It, like any other statement inconsistent with a witness' testimony, could have no other effect than to either impeach or weaken the testimony given by the plaintiff, according as the jury or court might view the variance. Therefore, the jury having found in favor of the plaintiff on the question of consideration, it is to be presumed that they fully and fairly considered the alleged discrepancies, and either reconciled them with the testimony as given by plaintiff, or viewed them as not possessing sufficient importance to justify a total disregard of plaintiff's testimony. In any event, the jury must have found that, whatever disparity may have been disclosed between the denials in the answer to the cross-complaint and plaintiff's testimony, or whatever discrepancies, if any, may have been developed in plaintiff's testimony through cross-examination, these, even when considered with the testimony of the defendant, were insufficient to dispel the presumption that the note was given for a valid consideration. In this connection, it may be stated that, when plaintiff's attention was called to the denials in his answer to the cross-complaint, which counsel for appellants claims are inconsistent with a valid defense to the charge of want of consideration, he explained that the answer and the particular averments thus referred to were the work of his attorney and not his, thereby disclaiming personal responsibility for said declarations.

It is next claimed by the appellants that, assuming that the consideration moving the defendant, Lotta Ruth Krone, to

execute and deliver to plaintiff the note was a promise on his part to forbear instituting a contest of the will of January 19, 1903, the note is nevertheless without consideration "because plaintiff had no such right." In the case of *Estate of Langley,* 140 Cal. 130, [73 Pac. 824], the supreme court held that claimants under an alleged prior will have the right to appear as contestants of a subsequent will. But the appellants undertake to differentiate that case from the one at bar on the ground that in that case the "alleged prior will" had been filed for probate, and in the present case the prior will was not filed or offered for probate. We are, however, unable to appreciate the force of the suggested distinction. The first will executed by the deceased appears upon its face to be in all respects valid, having been, apparently, executed with all the formalities required by our law. If it could have been shown that the later will had been procured to be executed through undue influence, or while the deceased was laboring under a mental state in which he would have been incompetent to make a will, and such will set aside for such reason, then the earlier will, assuming it to be perfectly valid, as it appears on its face to be, would have been the last will and testament of the deceased; and we can see no possible reason upon principle why the plaintiff, as a beneficiary under the first will, has not equal right with a lawful heir to institute a proceeding by which the pretended will could be shown and declared to be no will at all, and thus open the way for the disposition of the estate of the deceased in accordance with his expressed intention. And, whether the first will could have been shown not to express the intention of the deceased; whether it could have been shown that its execution was brought about by the exercise of undue influence over the deceased, or under other circumstances which would render it invalid as a testament, are questions which cannot constitute an answer to the proposition that the plaintiff, as a legatee under said first will, had the right to contest the later will. A man is the disposer by law of his own fortune or estate, and if, in conformity with the formalities prescribed by our law, he gives, as he has the undisputed right to do, his property by will to persons who are strangers to his blood, to the exclusion of those to whom his estate would descend in the case of intestacy, those who are so made the

beneficiaries of his bounty stand upon just as firm a foundation in their relations to the estate of the deceased testator as if they were his lawful heirs, capable of acquiring his estate under the laws of succession. A person, as suggested, is under no legal obligation to leave his estate, at his death, to his heirs or other kin, and when he elects to give his fortune to those who are not related to him by consanguinity, and does so according to the forms of law, he substitutes them as the beneficiaries of his bounty for those who would succeed to his estate if he were to die without making a testamentary disposition thereof. It might be an unnatural disposal of his estate, but not an unlawful one. We are, therefore, as declared, unable to conceive any sound or sane principle of law which would prevent strangers to the blood of the testator from contesting any subsequent will of the deceased, by the terms of which, if valid, a prior will, under whose provisions they were entitled to succeed to his estate, would be nullified or destroyed. And we think that the principle here stated has a much broader application as it is enunciated in the case of *Estate of Langley, supra,* than appellants are disposed to accord to it. The case of *Prater* v. *Miller,* 25 Ala. 320, [60 Am. Dec. 521], which is called to our attention by appellants, is not, in our opinion, an authority against the application of the principle referred to in the case at bar. In that case there was no prior will, nor did there appear to exist in that case any circumstances, as the plaintiff here testified he had information existed, from which a reasonable inference might follow that the will of the deceased had been brought into existence either through undue influence or when the deceased was mentally incompetent to make a will. In the case cited, the court, referring to the facts, says: ''Her [a daughter of the testator] engagement was to interpose no objection to the probate of her father's will—*a general forbearance* to gainsay its validity in the probate court,'' and then declares that such *general forbearance* is not a sufficient consideration to support a verbal agreement to pay the sum demanded by the proposed contestant. The court in that case deals with the facts *as they were established therein,* and here we must treat the questions presented by the light of the record in this case. Manifestly, the plaintiff here should not recover if the evidence clearly disclosed that he had pro-

cured the making of the note through fraudulent representations or by threats amounting to duress. But the facts in this case, *as found by the jury,* do not show such to have been the character of the transaction culminating in the execution of the note.

Although counsel for the appellants expressly disclaims that his contention is that an heir has no right to contest his ancestor's will until he has first shown that there is available to him proof which will fully sustain his claim, we think that such is the necessary assumption of his argument, or at least the effect of it. Clearly and concededly, an heir has the *legal right* to contest the will of his ancestor, and, with equal right, a legatee under a prior will may contest a later will of a testator excluding him, whether there is tenable ground upon which to base the exercise of that right or not. The heir or legatee may not succeed, because of paucity of proof to sustain his contest, in setting aside the will; yet the right to attempt to do so by appropriate proceedings is one of which he cannot be divested by any means of which we have any knowledge. And, having the *legal right* to contest, who is there to gainsay his *legal right* to dispose of such right? Or, to put the proposition concretely, a promise to waive such right would, obviously, it being in all respects a legal one, operate as a valid consideration upon which to rest an agreement with the other heirs or interested parties by which the latter agree to compensate him for such waiver, and such an agreement would be enforced where there was no showing that the transaction resulting in the. making of the agreement was tainted with fraud or the result of duress or marked by other elements which would vitiate any contract. The presumption is that the transaction here was fair and honest, and that the parties making the agreement, being fully cognizant of all the facts, acted in perfect good faith with each other, recognizing the consummation of the transaction in the light of the facts known to them as being justified and warranted upon principles of fair dealing and honesty. Such, we say, it is to be presumed was the character of the transaction here until the contrary might be made to appear by evidence of so satisfactory a nature as to so convince the jury or the trial court.

But, after all, the main proposition here is, as declared in the outset, that it was the duty of the defendants, in order to have defeated plaintiff's action, to overthrow the presumption that the note which is the subject of the controversy is supported by a valid or sufficient consideration. The jury found against the defendants upon this issue, and as there appears a substantial conflict in the evidence upon the question of consideration, which is in effect merely to say that defendants' proof was not strong enough to overcome the presumption of consideration, this court cannot interfere with that finding.

Complaint is made that the court erred to the prejudice of the defendants in giving and refusing to give certain instructions. We shall not review these assignments in detail, it being sufficient to say that we have given the charge of the court to the jury painstaking examination, and are of the opinion that therein the law applicable to the issues and the evidence presented was fairly, fully and correctly declared. Many of the rejected instructions do not contain correct statements of the law, while the principles correctly stated in other rejected instructions were covered by the court's charge.

Objection is also urged against some of the court's rulings admitting and excluding certain evidence. These rulings we have examined carefully, and find nothing in them invading the substantial rights of the defendants.

For the foregoing reasons, the judgment and order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 7, 1909.