[Civ. No. 14107. Second Dist., Div. Three. Apr. 3, 1944.]

JAMES ROBERT BROOKS, Appellant, v. BESSIE MARIE BROOKS, Respondent.

672

Newby & Newby for Appellant.

Perry F. Backus for Respondent.

BISHOP, J. pro tem.—The plaintiff has appealed from the judgment which denied him any portion of the $3,630 he sought to recover from his wife, the defendant. The theory of plaintiff's complaint was that the money had been paid under a contract void because against public policy, the contract being that the parties would get married, the defendant would continue to render to the plaintiff the domestic

and nursing services she had been rendering as his house-keeper and practical nurse, and the plaintiff would continue to pay her the $80 a month he had been paying her for those services. The marriage and the agreement to pay defendant $80 per month, according to the complaint, were not plaintiff's proposals but came about by a threat on the defendant's part that she would leave him unless he married her, and that when she left he would be helpless because he could not get another nurse. He "reluctantly" yielded to the solicitations of the defendant. Division Two of this court had this complaint under review in *Brooks* v. *Brooks* (1941), 48 Cal.App.2d 347 [119 P.2d 970], and found that its allegations stated facts sufficient to constitute a cause of action.

The evidence amply sustains the trial court's determination that the allegations of the complaint were not true. Plaintiff's testimony was in harmony with the allegations of his complaint, with the exception that his inability to secure another nurse to perform the menial tasks that had been defendant's daily lot became known to the plaintiff as a result of his own investigation; it was not a part of the pressure he claimed that the defendant had brought to bear upon him. Possibly the trial court wondered if maybe the plaintiff had sworn to something other than the truth, in verifying his complaint. Such a suspicion may well have grown into a conviction when the defendant took the stand and testified that the plaintiff and not she had proposed marriage and that positively nothing was said to the effect that he was to pay her $80 per month. The trial court may well have doubted, also, the truth of plaintiff's "reluctance" to marry the defendant, in view of the numerous notes from "Dimmy," the plaintiff, to "Cuddle," the defendant.

Two of plaintiff's positions, on this appeal, have a common foundation. He contends, first, that the testimony of the defendant, to the effect that there had been no agreement that she was to receive $80 a month, is incredible. Not only is it incredible for her to so testify, plaintiff argues, but there has been "raised a conclusive presumption of the existence of said oral agreement, which she cannot deny in this action." The ground upon which these two contentions are based is found in the pleadings in an earlier case brought by the plaintiff in this action to obtain a divorce from the defendant. In the divorce action the defendant, in filling out

the formal affidavit for order to show cause *in re* alimony pendente lite, etc., after stating that she had been employed, gave the following response to the form's request to "state the dates, occupations, and salaries received": "Eight years ago I took position as nurse for plaintiff. $80.00 per mo. In 1936, we were married. He promised to pay the same to me as before marriage." In his amended complaint, in the divorce action, the plaintiff alleged that "it was orally agreed" that if they married he would continue to pay her $80 per month. This allegation the defendant did not deny when she answered. Furthermore, as the plaintiff points out, the defendant filed a cross-complaint in the divorce action in which she alleged that "plaintiff, at the time of his proposal of marraige [sic] to this defendant, promised and agreed that plaintiff would provide room and board for this defendant and her said son, and would in addition thereto, pay to defendant the sum of $80.00 per month, said sums to be her own separate property."

Proof of these statements made by the defendant in the course of the divorce action and before the decision in *Brooks* v. *Brooks, supra,* 48 Cal.App.2d 347 [119 P.2d 970], became known, both impeached the defendant as a witness and furnished admissions against her interest tending to establish the fact that the oral agreement claimed by the defendant had been entered into. It does not follow, however, that the trial court was without warrant in finding that plaintiff's allegations were untrue. As the burden of proving his allegations was on the plaintiff, it was proper to find "not true" any allegation which he failed to establish as the truth. (*Dieterle* v. *Bekin* (1904), 143 Cal. 683, 688 [77 P. 664, 666].) The argument that a party is not to be believed because he has sworn falsely cuts both ways in this case. Plaintiff's testimony, as we have seen, did not agree with his sworn statement that the defendant had told him that if she left he could not get another nurse. But this is not all. The very allegation of the cross-complaint quoted above, to which the plaintiff points as being contrary to the defendant's present testimony, the plaintiff denied under oath in his answer. The confusion, created by conflicts between the sworn statements in the pleadings, and proceedings and the sworn statements of the witnesses, produced nothing more startling than a conflict in the evidence, which it became the duty of the

trial court and not of an appellate court to resolve. (*Ruth v. Krone* (1909), 10 Cal.App. 770, 780 [103 P. 960, 964].)

A finding was made "that it is true that defendant executed verified statements in the divorce action . . . in which it was stated that at the time of his proposal of marriage to defendant, plaintiff promised and agreed to pay defendant $80 per month . . . but the Court finds that defendant did not know that said statements were in the said verified statements, and that she signed said statements without knowledge that said statements were contained therein." Contrary to plaintiff's claim, the evidence does support this finding, for such statements were contained only in the cross-complaint, and when confronted with them the defendant answered: "If there was anything said at that time, I have no memory of it and it may be I didn't read this thoroughly. I don't understand, but I will state now that at the time of the marriage, of the proposal, that there was no $80.00 a month mentioned, just as I said yesterday and today."

Moreover, the findings that control, in such a situation as this, are those on the ultimate facts, not those covering matters only of probative value. (*White* v. *Rosenstein* (1933), 134 Cal.App. 576, 578 [25 P.2d 884, 885]; *Fitzpatrick* v. *Underwood* (1941), 17 Cal.2d 722, 727 [112 P.2d 3, 6].)

Plaintiff's second contention based on the pleadings in the divorce action, is variously expressed but its first appearance is typical. "The respondent is conclusively bound by her affidavit and pleadings filed in the divorce action." Why the defendant should be bound by her pleadings but the plaintiff be free to depart from his denial thereof, is not developed. Insofar as plaintiff's cases touch at all on the problem, they are limited to the proposition that a party is bound in any case by his pleadings in that case, and that they may be received in other actions to impeach him as a witness or as admissions against interest. We think it clear that under the circumstances of this action, the defendant does not appear to be estopped, by her statements in the divorce action, to take the position that the money she received from her husband during the term of their married life was received as his contribution to his wife's welfare and not pursuant to a contract void because contrary to public policy.

Should it be granted that by her pleadings in the divorce action the defendant is somehow estopped in this action from denying that she and the plaintiff did enter into

a contract whereby he was to pay her $80 per month after their marriage, the judgment denying the plaintiff relief would still be supported. This is so because of the finding, not contradicted by defendant's pleadings, that it was the plaintiff and not the defendant who proposed. ■ Ordinarily the parties to a contract, void because contrary to public policy, will be left where they are, when they come to the court for relief. (*Martin* v. *Wade* (1869), 37 Cal. 168, 174, 175; *Bank of Orland* v. *Harlan* (1922), 188 Cal. 413, 421 [206 P. 75]; *Haruko Takeuchi* v. *Schmuck* (1929), 206 Cal. 782, 788 [276 P. 345]; *Schmitt* v. *Gibson* (1910), 12 Cal.App. 407 [107 P. 571].) In *Brooks* v. *Brooks, supra,* 48 Cal.App.2d 347 [119 P.2d 970], it was held that the plaintiff could recover, because the parties were not *in pari delicto*. ■ But this ruling, based on the allegations of the complaint, ceased to be the law of the case when it appeared that the allegation that the defendant was the moving spirit was not true. The plaintiff now appearing as the one who proposed the marriage and, for this point only we are assuming, the agreement to continue to pay $80 per month, he appears at least as guilty as the defendant for entering into the contract, and is not now entitled to receive the aid of the courts in recovering the sums he has paid his wife under the contract he now characterizes as iniquitous.

Plaintiff makes arguments under various headings which, upon examination, are found to fall under, and with, those we have discussed. This is not true of one point, made for the first time in plaintiff's reply brief. He complains that the trial judge decided the case without reading the depositions after they were received in evidence, but that he had read them before they were received in evidence. We are not sure which action is claimed to be error, but it is clear that no prejudice exists if error does.

The judgment is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 1, 1944.