[Civ. No. 7198. Third Dist. Feb. 9, 1946.]

RAYMOND WALLACE, Appellant, v. HARRY D. OPINHAM, Respondent.

Harry W. Falk for Appellant.

Blaine McGowan for Respondent.

THOMPSON, J.—The plaintiff appealed from a judgment rendered pursuant to an order sustaining a demurrer to the complaint to recover gambling losses, without leave to amend the pleading. The second cause of action alleges that plaintiff and defendant engaged in "a game of cards . . . known as Twenty-One," which is specifically prohibited by section 330 of the Penal Code. It is asserted that, at that game, the plaintiff lost the total sum of $9,250 by means of the fraud of the defendant in using a deck of "marked cards," which fact was unknown to plaintiff.

The appellant contends that he was not *in pari delicto* with the defendant and that he may therefore maintain the

action to recover the money of which he was thus defrauded.

The card game known and designated in the complaint as "Twenty-One" is specifically prohibited by section 330 of the Penal Code, regardless of where it is played. The plaintiff and defendant voluntarily engaged in that unlawful game, in the course of which plaintiff lost the money he now seeks to recover by this suit. The second count of the complaint is necessarily founded on plaintiff's participation in that unlawful and prohibited game. He could not prove the alleged fraud and deceit, by means of which he lost his bets, without evidence showing that the fraud was exercised incident to his participation in that game of cards which is prohibited by statute. It follows that the parties were *in pari delicto* with respect to their unlawful playing of that game. ▮ Where the parties voluntarily engage in a gambling game which is prohibited by law, *in the absence of a statute authorizing a recovery of gambling losses*, neither courts of law nor equity will aid or assist either party to enforce rights growing out of that illegal transaction. (*Babcock* v. *Thompson*, 3 Pick. (Mass.) 446 [15 Am.Dec. 235] ; 38 C.J.S. 99, § 29.) In the authority last cited it is said:

"In substantially all jurisdictions gambling contracts are treated as unenforceable; and generally, in the absence of a statute providing for recovery or relief, the court will not, at law or in equity, . . . aid or assist either party to a gambling contract or transaction to enforce any right or claim against the other growing out of the contract or transaction, but will leave the parties where they have placed themselves and the court finds them. Even though a party to an illegal betting contract seeks alleged rights against a third person, the court will not aid him where he must rely on the illegal contract." (Citing *Kyne* v. *Kyne*, 16 Cal.2d 436 [106 P.2d 620].)

In the Kyne case last cited a judgment for defendants, involving the title to money wagered on the outcome of a gubernatorial election, was reversed. The Supreme Court said:

"The general rule is that the courts will not recognize such an illegal contract and will not aid the parties thereto, but will leave them where it finds them. The rule has been rigidly enforced in this state to deny any relief in the courts to parties seeking to recover either their stakes or their winnings under a wagering contract which is in violation of law,

whether the party against whom the relief was sought was a party to the wager or a stakeholder for the parties to the wager.'' (Citing authorities.)

The case of *Babcock* v. *Thompson, supra,* was a suit to recover gambling losses. Evidence of fraud on the part of the defendant was rejected and judgment of nonsuit was rendered against plaintiff. The judgment was affirmed. The court said:

''The court is of the opinion that the action cannot be maintained. We have no doubt, that according to the general policy and laws of this commonwealth, all gaming is unlawful; and the plaintiff cannot maintain this action, where he is obliged to show his illegal act as the foundation for a recovery. . . . Where a party acts illegally, he is to suffer the loss of his money as the consequence, if the money is sought to be recovered, *except where he may have a remedy under the particular provisions of some statute. Here is a case of gaming accompanied with cheating.* Clearly if the gaming had been fair, the law would give no remedy. *The only question then is, whether the fraud will alter the case.* We think it will not. If a man thus voluntarily puts himself in a condition to be cheated, through his illegal act he cheats the government, and the other person cheats him, and they must be left to settle the affair between themselves.'' (Italics added.)

To the same effect is *Schmitt* v. *Gibson,* 12 Cal.App. 407 [107 P. 571].

On principle, the California cases are in accord with the preceding cases. No California statute authorizes a party to an illegal transaction which is prohibited by law to recover gambling losses, regardless of the fact that one of them may have been the victim of fraud or deceit with respect to some incident to that illegal transaction. It has been frequently decided that courts will not become the arbiters of incidental acts of participants in gambling games which are prohibited by law. All persons who are concerned in or who aid or abet the commission of either a crime or a misdemeanor, are deemed to be principals therein. (Pen. Code, § 31.) Public policy prompts courts to decline to distinguish between degrees of turpitude of parties who engage in outlawed transactions. Otherwise courts might be compelled to decide which party cheated the most.

In the case of *Abbe* v. *Marr,* 14 Cal. 210, a judgment

against the defendants for recovery of money lost by plaintiff in an unlawful wager on a horse race, although the respective parties "were not equally at fault," was reversed. The court said:

"No Court of justice can listen to such a case. When the plaintiff asserts his own turpitude in this way, he sends his case out of Court. If, in attempting, by way of reprisal or otherwise, to swindle another, [or to violate the statute against prohibited gambling], he becomes the victim of his own arts, it may become a question in morals or in honor, which party is the more culpable; Courts of Law entertain no discussion on the subject, but terminate the controversy by shutting their doors in the face of the intruder."

Likewise, in the case of *Gridley* v. *Dorn*, 57 Cal. 78 [40 Am.Rep. 110], a judgment for plaintiff in a suit to recover a wager on a horse race alleged to have been lost by fraud of the defendant, was reversed and the court was directed to dismiss the action. That opinion concludes with the statement:

"If, notwithstanding the evil tendency of betting on races, parties will engage in it, *they must rely upon the honor and good faith of their adversaries, and not look to the courts for relief in the event of its breach.*" (Italics added.)

In *Kreamer* v. *Earl*, 91 Cal. 112 [27 P. 735], judgment for plaintiff to recover state land procured in contravention of law, was reversed and the court was directed to dismiss the action. The Supreme Court said, at page 118:

"A court of equity will not allow itself to become a hand-maid of iniquity of any kind. It intervenes, not for the sake of the party who is benefited by the intervention, but for the sake of the law itself. It matters not that no objection is made by either party; when the court discovers a fact which indicates that the contract is illegal and ought not to be enforced, it will, of its own motion, instigate an inquiry in relation thereto." (See 17 C.J.S. 659, § 272.)

The California cases are uniform in holding that where money or property is lost in a transaction between the parties which is prohibited by law, neither of the parties has standing in a court of law or equity to recover his losses. (*People* v. *Rosen,* 11 Cal.2d 147, 150 [78 P.2d 727, 116 A.L.R. 991]; *Johnston* v. *Russell,* 37 Cal. 670; *Union Collection Co.* v. *Buckman,* 150 Cal. 159, 164 [88 P. 708, 119 Am.St.Rep. 164,

11 Ann.Cas. 609, 9 L.R.A.N.S. 568] ; *Bank of Orland* v. *Harlan*, 188 Cal. 413, 421 [206 P. 75] ; *Schur* v. *Johnson*, 2 Cal. App.2d 680, 683 [38 P.2d 844] ; *Brooks* v. *Brooks*, 63 Cal. App.2d 671, 676 [147 P.2d 417] ; *Asher* v. *Johnson*, 26 Cal. App.2d 403, 411 [79 P.2d 457].)

There are some cases in other jurisdictions which may be in conflict with the foregoing. An examination of such cases relied upon by the appellant in this action indicates that, at least some of them, are based on statutes specifically entitling plaintiffs to recover their losses when they are not *in pari delicto* with the defendants. (*Bamman* v. *Erickson*, 288 N.Y. 133 [41 N.E.2d 920, 141 A.L.R. 938].) If any of such cases exist in jurisdictions having no such statute, we assume they are not in conformity with the California rule or with the great weight of authority in that regard, and we are therefore not in accord with them.

The statutes of several states expressly authorize the recovery of gambling losses under specified circumstances. (*Bamman* v. *Erickson*, *supra*; 24 Am.Jur. 457, § 81.) California has no such statute. Article IV, section 26, of the California Constitution, which prohibits the enactment of statutes validating lotteries, and directs the Legislature to prohibit by law the "fictitious buying and selling of the shares of the capital stock of corporations," formerly provided that "All contracts for the sale of shares of the capital stock of any corporation or association, on margin or to be delivered at a future day, shall be void, and *any money paid on such contracts may be recovered by the party paying it* by suit in any court of competent jurisdiction." (*Parker* v. *Otis*, 130 Cal. 322 [62 P. 571, 927, 92 Am.St.Rep. 56].) That provision had no application to the recovery of losses sustained by one who participates in a gambling game prohibited by statute. Moreover, that section of the Constitution was amended in 1908. It now provides that *"neither party to any such contract shall be entitled to recover . . . any money paid thereon,* in any court of this state."

For the reason that it affirmatively appears from the complaint in this action that the gambling losses which plaintiff seeks to recover were sustained and paid by him in the course of a gambling card game in which he voluntarily engaged, which is prohibited by statute, we are of the opinion this suit in assumpsit may not be maintained, regardless of the fact that the defendant may have resorted to fraud by

furnishing a marked deck of cards with which they were playing the unlawful game of Twenty-One.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 8, 1946. Carter, J., and Schauer, J., voted for a hearing.