[Civ. No. 2532.   Third Appellate District.—October 25, 1923.]

## MOTOR INVESTMENT COMPANY (a Corporation), Respondent, v. LEON BRESLAUER et al., Appellants.

[1] EVIDENCE—CHATTEL MORTGAGE EXECUTED IN SISTER STATE—LAWS PERTAINING TO — TESTIMONY OF ATTORNEY — COMPETENCY OF. — Where the requisites of a chattel mortgage under the laws of a sister state in which it was executed were to be proved in a certain action, the testimony of a witness, who had been for twelve years a practicing attorney at law in said state and who qualified himself as being skilled in the laws thereof, to the effect that an affidavit of good faith of the parties as a part of the chattel mortgage was not required by any law of said sister state, was competent.

[2] COMITY—EXECUTION AND RECORDATION OF CHATTEL MORTGAGE IN SISTER STATE—REMOVAL OF MORTGAGED PROPERTY TO THIS STATE—VALIDITY AND ENFORCEABILITY OF LIEN—INNOCENT PURCHASERS.— Even if it were true that the effect of the due recordation of a chattel mortgage in the state where it was executed according to the law of such state is not to charge all persons in another state to which the mortgaged chattel may have been removed with constructive notice of the mortgage, or that the recordation of the mortgage in the latter state imparts no such notice, or that the doctrine of *caveat emptor* may not, in such a case, be invoked as a protection of the rights of the mortgagee as against the creditors of the mortgagor or subsequent purchasers and encumbrancers of the property in good faith, yet upon the rule of comity between the states, the state to which the property has been removed will recognize the validity of the lien and sanction its enforcement, notwithstanding that the chattel may have fallen into the hands of innocent purchasers or encumbrancers in good faith and for value.

[3] CLAIM AND DELIVERY—CHATTEL MORTGAGE OF TRUCK—PROOF OF DEBT—EVIDENCE.—In an action of claim and delivery to recover possession of a motor-truck under a chattel mortgage thereof held by plaintiff and executed and recorded according to the

2. Extraterritorial force of chattel mortgage record, notes, 3 Ann. Cas. 109; Ann. Cas. 1914B, 1252; 17 L. R. A. 127.

Necessity of refiling or re-recording chattel mortgage in state to which property removed, notes, 64 L. R. A. 356; 6 L. R. A. (N. S.) 940; 35 L. R. A. (N. S.) 386; L. R. A. 1917D, 942.

laws of a sister state, it was sufficient for plaintiff, to support its action, to show that it had the right to the possession of the truck, and to do this all it was compelled to do was to prove that the mortgagor owed it a debt, that he had duly executed a mortgage on the truck in its favor to secure said debt, and that it was stipulated in the mortgage that if he defaulted in the payment of the debt or any part thereof, the plaintiff would be entitled, upon such default, to take and hold possession of the truck, and that the mortgagor did default in such payment, the mortgage itself constituting competent evidence and sufficient proof of the debt and the terms and conditions of payment and of the consequence following from failure to pay at the time or times therein specified.

[4] ID.—EXECUTION — MODE OF — EVIDENCE. — In such action, the evidence was sufficient to show that the chattel mortgage in question was executed according to the laws prescribed by the sister state in which it was executed for the execution of such instruments.

[5] ID.—RECORDATION—PLEADING—APPEAL.—In such action, the defendants may not be heard to say that the recordation of such mortgage was not in compliance with the laws of the state in which it was recorded, where in their answer they failed to tender an issue on the question of the recordation of the mortgage.

[6] ID.—RECORDATION—SITUATION OF MORTGAGED PROPERTY—PRESUMPTION—EVIDENCE—APPEAL.—In such action, where it was shown without contradiction that the mortgaged truck was situated in the sister state at the time of the execution of the mortgage thereof, the presumption is that the truck was in said state at the time of the recordation of the mortgage, which was seven days after the execution of the mortgage, and this presumption will stand as a sufficient predicate for a finding or a judgment until there has been presented countervailing proof of sufficient probative strength to dispel it; and, generally speaking, or unless there is something in the nature of the testimony or evidence received against such presumption which would require a court of review to declare it sufficient to overcome its effect, it is peculiarly the function of the trial court or the jury to determine whether the testimony or evidence so offered and received was sufficient in evidentiary force to destroy the effect of the presumption.

[7] ID.—RECORDATION—EVIDENCE.—In such action, the claim of defendants that the evidence shows that the mortgaged truck was not in the sister state at the time of the recordation of plaintiff's mortgage is not sustained by the record on appeal.

APPEAL from a judgment of the Superior Court of Butte County. H. D. Gregory, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. Oscar Goldstein for Appellants.

Bond & Deirup for Respondent.

HART, J.—This action, in claim and delivery, was brought by the plaintiff to recover possession of a Day-Elder motor-truck, or, in case possession thereof cannot be had, judgment for the sum of $1,400, the alleged value of said truck.

The plaintiff was awarded judgment as prayed for, and the defendants appeal therefrom upon a record prepared according to the alternative method.

The claim of plaintiff to the right to the possession of the truck arises out of a chattel mortgage alleged to have been executed by one William England, then owner of said truck, in favor of plaintiff, a duly organized corporation of the state of Oregon, to secure the purchase price of said truck, which was the sum of $2,150.05, the plaintiff having sold the truck to said England. Said mortgage was executed on the thirtieth day of September, 1920, in Jackson County, state of Oregon. At that time England was a resident of said county and state, and the said truck was then situated therein. The mortgage was recorded in the proper office of the said county of Jackson on the seventh day of October, 1920. The instrument provided for the payment of the purchase price in monthly installments of $215 each, the first installment being payable thereunder one month and ten days after the date of said mortgage, and each of the remaining installments being payable every month and ten days thereafter until the same is paid. The mortgage also provided that in case of default in the payment of any of said installments when the same became due, or in case the mortgagor made default in the performance of any of the covenants or conditions "to be by him kept," etc., the mortgagee was at liberty to declare the whole sum of both principal and interest due and payable and at once proceed to collect the same, and either foreclose the mortgage or take possession of the truck, wherever the same might be found. It further provided that the mortgagor

should not, without the written consent of the mortgagee, remove the property from the state of Oregon. The mortgage was not accompanied by the affidavit of good faith which is required by our own statute to be attached to a chattel mortgage to constitute it a valid lien as against the creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value. (See sec. 2957, Civ. Code, subd. 1.)

It appears that subsequently to the execution of said mortgage, England surreptitiously, or without the knowledge or the consent of the plaintiff, removed the mortgaged truck to the county of Butte in the state of California. Having shortly after such removal learned thereof, the plaintiff caused its said mortgage to be recorded in the office of the county recorder of said Butte County on the thirteenth day of November, 1920.

On the twelfth day of May, 1921, approximately six months after the said mortgage had been filed for recordation with the county recorder of Butte County, the defendant Breslauer and one G. W. Wright loaned England the sum of $600 and the latter executed and delivered to the former his promissory note for said sum, payable on the twenty-third day of May, 1921. To secure the payment of said note, England executed to Breslauer and Wright a mortgage on the truck in dispute. This mortgage was in all respects in the form required by the laws of California and was recorded in the office of the county recorder of Butte County on the thirteenth day of May, 1921. In the month of June, 1921, England having defaulted in the payment of the Breslauer and Wright note, said Breslauer, in pursuance of the authority vested in him and said Wright by their mortgage, took possession of the truck. The plaintiff thereafter replevied and so secured possession of the truck.

The foregoing facts were found by the court to be true. As to the plaintiff's mortgage, it was further found that the same, as "drawn, executed and recorded, contained all the matters and things required to be contained therein by the laws of the State of Oregon in order to make said chattel mortgage, when so recorded, a first lien upon said truck wherever the same might be found." The court further

found that the laws of the state of Oregon do not require that a chattel mortgage executed in that state, to be valid as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, shall be accompanied by or have attached thereto an affidavit of the parties that the same was made in good faith and without any design to hinder, delay or defraud creditors; that said chattel mortgage, under the laws of Oregon, "was and is valid as against the defendants herein," etc.

As to the mortgage of the defendants, the court found that the same was taken by Breslauer and Wright without actual knowledge of the existence of any lien attaching to or prior mortgage covering the truck in question; that said mortgage was duly recorded in the office of the county recorder of Butte County; that said mortgage was received by Breslauer and Wright without any design to hinder, delay, or defraud any creditor or creditors of England. But, in this connection, the court further found that the chattel mortgage of the plaintiff was, at the time the mortgage of Breslauer and Wright was recorded, in full force and effect and "was a first lien on said truck and was of record in the office of the County Recorder of said County of Butte, and that said Leon Breslauer and G. W. Wright had constructive notice of the existence and contents of said mortgage to plaintiff at the time when they accepted said mortgage from said William England."

The plaintiff, for the purpose of stalling the operation of the presumption, otherwise to be indulged, that the laws of the state of Oregon relating to the legal essentials of a chattel mortgage were not, in all particulars, the same as the law of California relating to the same subject, introduced in evidence the said laws of the former state, it having specifically pleaded in its complaint that the laws of Oregon did not, at the time of the transaction culminating in the execution by England to plaintiff of the mortgage on the truck in controversy, require that an affidavit of good faith should be attached to a chattel mortgage to constitute it a valid lien as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value. The laws so introduced consisted

of all the sections of the laws of Oregon pertaining to chattel mortgages, and were taken from Olsen's General Laws of Oregon, which the attorney for the defendants stipulated contained all of the laws of that state. These laws, introduced in evidence, contained no provision requiring an affidavit of good faith to accompany or be attached to a chattel mortgage. The plaintiff's general manager, C. C. Hall, who also had been for twelve years a practicing attorney at law in the state of Oregon, and who qualified himself as being skilled in the laws of said state, testified that an affidavit of good faith as a part of a chattel mortgage was not required by any law of the state of Oregon. [1] This was competent testimony. (Sec. 1902, Code Civ. Proc.; *Estate of Faber,* 168 Cal. 491 [143 Pac. 737].) Thus it is to be seen that the finding that no such an affidavit was required to be attached to a chattel mortgage executed in the state of Oregon, when the mortgage of plaintiff was executed, is well supported.

There is no law in California expressly requiring chattel mortgages properly executed and recorded in a sister state to be recorded in this state in order to perpetuate their validity and force herein, where such mortgaged property has been removed to this state. The California statutes prescribing the mode and manner of executing and recording mortgages on personal property have reference to mortgages executed within this state upon property here situated. It has been said by our supreme court, however, that, "in the absence of any specific provision regarding the removal of mortgaged property, the record of a chattel mortgage in the town or county where it is required to be originally filed for record is held to be constructive notice to all the world, and the mortgage is valid, even if the property may be removed to another town or county, or to another state." (*Hammels* v. *Sentous,* 151 Cal. 520, 523, 524 [12 Ann. Cas. 945, 91 Pac. 327, 328], and cases therein cited.)

In *Kanaga* v. *Taylor,* 7 Ohio St. 134 [70 Am. Dec. 62], the mortgage was executed and recorded in the state of New York according to the laws of that state and the mortgaged chattel thereafter, and while the lien of the mortgage still remained undischarged, was removed to the state of Ohio, where default in the payment of an installment of the

purchase price occurred, and where the property was sold by the mortgagor, through a public auctioneer, to a third party. The mortgage was not recorded in Ohio, and neither the auctioneer nor his vendee had notice of the mortgage. As here, the mortgage provided that failure by the mortgagor to pay any of the installments at the time it fell due would entitle the mortgagee to take possession of the chattel. The contention of the defendant (vendee) was that the lien of the mortgage was lost by the removal of the property from the state of New York to the state of Ohio. The Ohio court, affirming the judgment in favor of the plaintiff (mortgagee), said among other things: "Gregory held the property subject to the condition of the mortgage, which was the payment of the money, as specified therein, or in case of default, the plaintiff was authorized to take possession of and to sell it. The default occurred after the property had been removed into a foreign jurisdiction. Gregory had no power to confer any better title than he held; and those who might desire to purchase of him were bound by the rule of *caveat emptor.* True, there was no record of the mortgage in Ohio, but Gregory was a stranger to Moore, and apprised him that his late residence was Buffalo. This ought to have excited inquiry by Moore, which might quite as well have been instituted in Buffalo as in another county of this state. He cannot charge upon the plaintiff the consequences of this neglect of his. He took the property subject to the encumbrance upon it; and that amount, we think, was very properly found and reported by the jury in favor of plaintiff." (See, also, *Pease* v. *Odenkirchen,* 42 Conn. 415; *Barrows* v. *Turner,* 50 Me. 127; *Brigham* v. *Weaver,* 6 Cush. (Mass.) 298; *Whitney* v. *Heywood,* 6 Cush. (Mass.) 82; *Hoit* v. *Remick,* 11 N. H. 285; *Hicks* v. *Williams,* 17 Barb. (N. Y.) 523; *Greenville Nat. Bank* v. *Evans,* 9 Okl. 353 [60 Pac. 249]; *Hornthal* v. *Burwell,* 109 N. C. 10 [26 Am. St. Rep. 556, 13 L. R. A. 740, 13 S. E. 721].)

[2] But even if it were true that the effect of the due recordation of a chattel mortgage in the state where it was executed according to the law of such state is not to charge all persons in another state to which the mortgaged chattel may have been removed with constructive notice of the mortgage, or that the recordation of the mortgage in the

latter state imparts no such notice, or that the doctrine of *caveat emptor* may not, in such a case, be invoked as a protection of the rights of the mortgagee as against the creditors of the mortgagor or subsequent purchasers and encumbrancers of the property in good faith, yet it is clear from all the authorities that, upon the rule of comity between the states, the state to which the property has been removed will recognize the validity of the lien and sanction its enforcement, notwithstanding that the chattel may have fallen into the hands of innocent purchasers or encumbrancers in good faith and for value. Indeed, counsel for the defendants conceded at the trial, substantially, that, if the plaintiff's mortgage, in its execution and recordation, complied in all material respects with the requirements of the laws of the state of Oregon relating to the execution and recordation of chattel mortgages and the property mortgaged was situated in said state when the mortgage was executed and recorded, the effect of the removal of the mortgaged property from the state of Oregon to the state of California would not be to destroy the lien of the mortgage or the force and effect thereof. The doctrine, approved by all the cases and authorities to which our attention has been directed, is enunciated as follows in *Shapard* v. *Hynes,* 104 Fed. 449, 452 [52 L. R. A. 675, 45 C. C. A. 271, 274]:

"There has been much discussion concerning the effect of the removal of mortgaged goods and chattels from the state where the mortgage was made and recorded, to another state. The general consensus of judicial opinion seems to be that when personal property, which at the time is situated in a given state, is there mortgaged by the owner, and the mortgage is duly executed and recorded in the mode required by the local law, so as to create a valid lien, the lien remains good and effectual, although the property is removed to another state, either with or without the consent of the mortgagee, and although the mortgage is not rerecorded in the state to which the removal is made. The mortgage lien is given effect, however, in the state to which the property is removed, solely by virtue of the doctrine of comity." (See *Handley* v. *Harris,* 48 Kan. 606 [30 Am. St. Rep. 322, 17 L. R. A. 703, 29 Pac. 1145], and other cases cited in *Shapard* v. *Hynes,* 104 Fed. 453 [52 L. R. A. 675,

45 C. C. A. 271]. See, also, 5 Ruling Case Law, p. 399, sec. 21; *Alferitz* v. *Ingalls,* 83 Fed. 964; *Bonin* v. *Robertson,* 2 Ter. Law Rep. (N. W. Ter.) 21, 24 et seq.)

In the case from which the foregoing excerpt is taken it is said that, after a careful research, there was found but one state (Michigan) in which the rule of comity in such cases as this was not recognized and applied. The rule, however, appears to be founded upon the principles of equity and natural justice. As applied to cases of the character of the one before us, it can produce no harsh or unjust results. The principle underlying it may be analogized to that upon which the owner of property stolen from him and taken or transported to another state may follow the thief into the latter state and reclaim or take possession of the pilfered goods or chattels wherever found. A state may, it is true, refuse to recognize the rule of comity in such cases, but should it do so, it would become a party to every such fraudulent transaction. It is not going too far to say and to hold that it is preferable and more desirable that an innocent purchaser or encumbrancer of personal property brought into a state under such circumstances as those characterizing the transaction with which we are here concerned should suffer loss, which possibly his own improvidence or want of diligence has brought to him, than that the state should assume and maintain an attitude towards such transaction which would necessarily stigmatize it as an accessory after the fact to the fraud inhering therein. (See *Bonin* v. *Robertson, supra.*)

But it is further contended that, granting the soundness of the above considered principles and that they apply, under appropriate circumstances, to cases of this character, the judgment must, nevertheless, be reversed for these asserted reasons: (1) That plaintiff failed to prove the note or debt to secure the payment of which the mortgage was given; (2) that it was not shown that the plaintiff's mortgage was executed and recorded according to the mode prescribed by the laws of the state of Oregon; (3) that the mortgaged chattel was not in the state of Oregon at the time of the recordation of the mortgage in Jackson County, said state.

1. Replying to the proposition first stated, it is to be remarked that this is not an action to recover on a promissory note or a debt. The action is in replevin, or, as our own

code designates the action, in claim and delivery. The ulti-
mate issue or fact in such an action, as the name of the
action plainly implies, involves the single question whether
the plaintiff is entitled to the possession of the specific per-
sonal property or chattel concerned. **[3]** In this case the
plaintiff, to support its action, was required merely to show
that it had the right to the possession of the truck, and to
do this all it was compelled to do was to prove that England
owed it a debt, that he had duly executed a mortgage on
the truck in its favor to secure said debt and that it was
stipulated in the mortgage that if he defaulted in the pay-
ment of the debt or any part thereof, the plaintiff would
be entitled, upon such default, to take and hold possession
of the truck, and that he did default in such payment.
These facts were shown by the mortgage itself, which was
introduced in evidence, and by the testimony of the general
manager of the plaintiff that default by England in the
payment of the installment of the purchase price of the
truck had occurred. It will not be questioned that, even if
it be conceded, as the attorney for the defendants contends,
that the certificate indorsed on the original mortgage by
the recording officer of Jackson County in the state of Ore-
gon to the effect that the instrument had been recorded in
said county and state is not competent evidence of such rec-
ordation, the mortgage, nevertheless, constitutes competent
evidence of the debt and the terms and conditions of pay-
ment and of the consequence following from failure to pay
at the time or times therein specified. Nor will it be ques-
tioned that the mortgage itself will stand as sufficient proof
of all those facts except the fact of the default, in the
absence of such a counter-showing as will destroy the proba-
tive force thereof. No such counter-showing was made or
attempted.

**[4]** 2. To the contention, made on this appeal, that it
was not shown that the mortgage was executed according to
the mode prescribed in such cases by the laws of the state
of Oregon, the answer is that a comparison of the original
mortgage with the requirements of the laws of the state of
Oregon relating to the execution and recordation of chattel
mortgages will show that the instrument as to its form as
well as in other respects accords with the provisions of said
laws, and from an examination of the testimony of the wit-

ness Hall, who prepared the mortgage, it will be seen that he testified that he was present and saw England subscribe his name to the instrument in the presence of the subscribing witnesses. In fact, counsel for defendants virtually admitted the execution of the mortgage in the following language: "I simply admit that Mr. England executed that proposed to be mortgage to the Motor Investment Company." As to the act of recording the mortgage, the attorney for the defendants contends that the instrument, bearing the certificate of the recording officer of Jackson County, Oregon, that the same had been recorded on the seventh day of October, 1920, is not itself competent proof of such recordation, since there was not attached to the instrument a certificate of any of the officers named in subdivision 7 of section 1918 of the Code of Civil Procedure, "that the copy is duly certified by the officer having the legal custody of the original." While, as presently we shall see, it is not necessary to decide this question here, it is deemed not amiss to say that the writer, speaking for himself and not for the court, is not prepared now to accept counsel's construction of said subdivision of section 1918. The precise point, so far as we are advised to the contrary, has never been passed upon in this state. It will be noted, however, that the subdivision mentioned appears to limit its application to *copies* and not to the *originals* of the documents therein referred to. If it were not for the concluding words of the subdivision, to wit, "having the legal custody of the *original,*" the problem would be easy of solution. In the case of the recordation of a mortgage or a deed, the recording officer, while having the legal custody of the *record* of the original instrument, does not have nor is he required to hold the legal custody of the original itself. **[5]** The question, however, need not be further considered here, since the defendants in their answer failed to tender an issue on the question of the recordation of the mortgage. The complaint alleges that the mortgage in question was executed on the thirtieth day of September, 1920, and that the instrument was duly recorded in the office of the county clerk (also county recorder) of Jackson County, Oregon, on the seventh day of October, 1920. The answer, as to said allegation of the complaint, is as follows: "Deny that said mortgage was, after the execution thereof, *and on the 7th day of October,*

*1920*, duly recorded in the office of the County Recorder,''
etc. This denial involves, obviously, a negative pregnant,
and tendered no issue upon the question of the recordation
of the mortgage. If it were necessary to cite authorities to
confirm the correctness of the conclusion thus announced
upon the point in hand, it would be sufficient to refer to the
comparatively recent case of *Janeway & Carpender* v. *Long
Beach Paper & Paint Co.*, 190 Cal. 150 [211 Pac. 6]. In
this connection, it may be stated that several other of the
denials of the answer of important averments of the com-
plaint were in the same insufficient form, but as to those
we preferred, as we found could be done, to dispose of the
points based thereon upon the merits rather than upon a
technical rule of pleading.

3. The claim that the evidence shows that the mortgaged
truck was not in the state of Oregon at the time of the rec-
ordation therein of the plaintiff's mortgage is not sustained
by the record. The witness Hall testified (and as to this
his testimony is not contradicted) that the truck in dispute
was situated in the state of Oregon on the thirtieth day of
September, 1920, at which time, as seen, the mortgage was
executed by England. There is, it is true, no direct or
positive evidence that the truck was in the state of Oregon
on the seventh day of October, 1920, the day on which the
mortgage was recorded. [6] But the presumption is that
it was in said state on the last-named day (Code Civ. Proc.,
sec. 1963, subds. 19, 20, 32), and this presumption will stand
as a sufficient predicate for a finding or a judgment until
there has been presented countervailing proof of sufficient
probative strength to dispel it. And, generally speaking, or
unless there is something in the nature of the testimony or
evidence received against such presumption which would re-
quire a court of review to declare it sufficient to overcome
its effect, it is peculiarly the function of the trial court or
the jury to determine whether the testimony or evidence so
offered and received was sufficient in evidentiary force to
destroy the effect of the presumption. (Code Civ. Proc.,
sec. 2061, subd. 2; *People* v. *Milner*, 122 Cal. 179 [54 Pac.
833]; *Sarraille* v. *Calmon*, 142 Cal. 651, 655 [76 Pac. 497];
*Adams* v. *Hopkins*, 144 Cal. 19, 36 [77 Pac. 712]; *Moore*
v. *Gould*, 151 Cal. 723, 726 [91 Pac. 616]; *Keating* v. *Mor-
rissey*, 6 Cal. App. 163, 168 [91 Pac. 677]; *Ruth* v. *Krone*,

10 Cal. App. 770, 773 [103 Pac. 960]; *Reclamation Dist. No. 70* v. *Sherman,* 11 Cal. App. 399, 419 [105 Pac. 277]; *Hitchcock* v. *Rooney,* 171 Cal. 285 [152 Pac. 913]; *Davis* v. *Judson,* 159 Cal. 121, 128 [113 Pac. 147]; *Blanc* v. *Connor,* 167 Cal. 719, 722 [141 Pac. 217]; *Cox* v. *Schnerr,* 172 Cal. 379 [156 Pac. 509].)

[7]    The only testimony presented by the defendants for the purpose of showing that the truck was in Chico, in this state, and not in the state of Oregon, on the day the plaintiff's mortgage was recorded in Jackson County, Oregon, was given by the proprietor of the hotel in Chico at which England and his wife registered and resided for several days, and the defendant Breslauer.   The former stated that he had no independent recollection of the time when England and his wife first went to the hotel as guests thereof but from the registration of said hotel he testified that England and his wife first registered there on the seventh day of October, 1920.   Breslauer, in response to questions by his attorney, testified as follows: "Q. I want to ask you about when did you first meet Mr. England? A. Oh, let's see; some time in 1920, the latter part of 1920.   Q. Well, in the month of October—do you know what date, approximately? A. Just the day before—the day after he came to Chico.   Q. If the evidence shows that he came to Chico on the 7th, when in that connection, would you say that you met him or saw him? A. Well, now, it must have been on the 8th.   Q. Where did you see him? A. I saw him on Main Street, right by the store.   Q. Did he have this Day-Elder truck with him at that time? A. Yes, sir, he did. Q. That is the same truck that was subsequently taken possession of by you? A. Yes, sir."

It requires no critical analysis of Breslauer's testimony to compel the conclusion that, even upon its face, it is not convincing.   It will be noted that the statement that he first met England in Chico was in the month of October was not made by him, but was suggested in a question propounded to him by his attorney.   Furthermore, he did not say that he knew when England first arrived in Chico, nor did he say that he derived any knowledge as to that fact through an inspection of the hotel register.   His testimony on the point merely amounted to the declaration that, if England first made his advent into Chico on the seventh day of October,

1920, then he "must" have seen him and the truck the following day. We are not able to follow his reasoning in that particular. In other words, it is not conceived how he could say that he met England with the truck the day following the latter's arrival in Chico if he did not know of his own knowledge the day of England's arrival in said city. If he based his knowledge of the latter fact upon what some other person told him or on what some other person told him of the fact that England had registered at the hotel, the testimony would be hearsay and upon that ground alone the court could have refused to give it credence. However, even if the testimony were not characterized by the infirmities pointed out, as has been shown and as is obvious, the trial court, in the exercise of its discretion in passing upon the credibility of witnesses and the weight of evidence, could have disregarded it as unworthy of belief. The trial court, as we are to assume from the result reached below, did disregard or discard it, and with the exercise of its discretion in that particular this court cannot justly interfere.

There are other points, specifically made, subsidiary, however, to the principal questions presented here, which, it is thought, it is not necessary to consider herein.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 22, 1923.