75 So.2d 778 (1954)
Leonard VINCENT, Appellant,
v.
GENERAL MOTORS ACCEPTANCE CORPORATION, a corporation, Appellee.
Supreme Court of Florida. Division A.
November 19, 1954.
Karkeet, Wilson & Rolfs, Miami, for appellant.
*779 Boggs, Blalock & Holbrook and Dean Boggs, Jacksonville, for appellee.
ROBERTS, Chief Justice.
This is an appeal from a summary final decree entered by the lower court in a suit instituted by the appellee, General Motors Acceptance Corporation ("GMAC" hereafter), against the appellant Vincent, and others, to enforce a lien represented by a conditional sales agreement held by GMAC against an automobile in the possession of Vincent. The decree awarded GMAC a lien against the automobile in the amount remaining due and unpaid under its agreement, ordered the vehicle sold to satisfy such lien, and decreed that any surplus should be paid over to Vincent. Vincent has appealed from the decree.
There is no dispute about the facts, and the only question here is whether in the circumstances outlined hereafter GMAC was entitled, as a matter of law, to a lien against the automobile as against a contention that Vincent was an "innocent purchaser for value" of the car. Stated as briefly as possible, the facts are as follows:
One Powell purchased the automobile from the Hurt Motor Company of Cordele, Georgia, on July 7, 1953, under a conditional sales contract which was assigned to GMAC on the same day. The agreement was duly recorded by GMAC in the public records of Tift County, Georgia (Powell's residence) on July 30, 1953, as required by Georgia law. Powell obtained a Georgia Certificate of Registration, but no notation of the conditional sales agreement was noted thereon, since it is not required by Georgia law. Some time prior to August 7, 1953, Powell brought the car to Florida without the knowledge or consent of GM AC, and on that date sold it to one Lee. At the time of the sale to Lee, Powell had not obtained a Certificate of Title from the Florida Motor Vehicle Commissioner and the car still bore a Georgia license tag.
Thereafter, on August 10, 1953, Lee applied to the Motor Vehicle Commissioner for a Florida Certificate of Title, stating in his application that he had bought the car from Lamar Powell, of Omega, Georgia, and that there were no liens against it. Attached was the Georgia registration certificate issued to Lamar Powell, of Omega, Tift County, Georgia. A Florida certificate of title was issued to Lee on August 20, 1953, upon which there were no lien notations, but showing that the car was previously registered in Georgia. Lee then sold the car to a used car dealer, who subsequently conveyed it to Vincent, also a used car dealer. The Florida certificate of title, containing the notation that the car was previously registered in Georgia, was transferred with each purchase. Neither Lee nor the subsequent vendees made any inquiry in Tift County, Georgia, as to whether a lien was of record against the vehicle.
On this appeal, Vincent admits that Lee was not an "innocent purchaser for value without notice" under our decision in McQueen v. M. & J. Finance Corp., Fla., 59 So.2d 49, and also because of Lee's failure to comply with the provisions of Section 319.27(3) (f), Florida Statutes 1953, F.S.A., infra. But it is contended that all purchasers after Lee were innocent purchasers, because they purchased under a Florida certificate of title showing no liens and without any notice, either actual or constructive, of the Georgia lien, and that their liens are therefore superior to GMAC's. This contention cannot be sustained.
This court said in Livingston v. National Shawmut Bank of Boston, Fla., 62 So.2d 13, 14, that "There is nothing in Chapter 319, Florida Statutes, F.S.A., as amended by Chapter 23658, supra, to indicate that the Legislature intended to cut off the rights of holders of liens valid in and registered under the law of the State wherein such liens were created, as such rights had been previously enforced in this state under the rule of comity." Under this rule, as applied by the great majority of courts in other jurisdictions, the lien of a conditional sales contract duly recorded in accordance with the law of the state where *780 made and where the property was situate at the time of the contract, is superior to and has priority over the rights and claims of innocent purchasers from or creditors of the conditional vendee subsequently acquired in another state to which the chattel has been removed without the consent or knowledge of the conditional vendor. See cases collected in the annotation in 13 A.L.R.2d, beginning at page 1318.
The reason for applying the rule of comity in such cases was well expressed by Mr. Justice Hart in Motor Inv. Co. v. Breslauer, 64 Cal. App. 230, 221 P. 700, in language which has been cited approvingly in other cases, viz., Mercantile Acceptance Co. v. Frank, 203 Cal. 483, 265 P. 190, 57 A.L.R. 696; Metro-Plan Inc. v. Kotcher-Turner, Inc., 296 Mich. 400, 296 N.W. 304, 307; Hart v. Oliver Farm Equipment Sales Co., 37 N.M. 267, 21 P.2d 96, 87 A.L.R. 962:
"The rule, however, appears to be founded upon the principles of equity and natural justice. As applied to cases of the character of the one before us, it can produce no harsh or unjust results. The principle underlying it may be analogized to that upon which the owner of property stolen from him and taken or transported to another state may follow the thief into the latter state and reclaim or take possession of the pilfered goods or chattels wherever found. A state may, it is true, refuse to recognize the rule of comity in such cases; but, should it do so, it would become a party to every such fraudulent transaction. It is not going too far to say and to hold that it is preferable and more desirable that an innocent purchaser or incumbrancer of personal property brought into a state under such circumstances as those characterizing the transaction with which we are here concerned should suffer loss, which possibly his own improvidence or want of diligence has brought to him, than that the state should assume and maintain an attitude towards such transaction which would necessarily stigmatize it as an accessory after the fact to the fraud inhering therein." [64 Cal. App. 230, 221 P. 703.]
The analogy is even more apparent when it is considered that, under the law of this state, Section 818.01, Florida Statutes 1953, F.S.A., it is a criminal offense to dispose of property held under a conditional sale contract without first obtaining the consent of the conditional vendor.
Our opinion in Livingston v. National Shawmut Bank of Boston, supra, 62 So.2d 13, was written with reference to the provisions of Chapter 319, as then in effect. We have, however, examined the changes made in such law by the 1953 Legislature and have found nothing which requires us to take a different view from the one expressed in that case, and quoted above. We hold, then, that the provisions of Chapter 319 were not intended to and do not "cut off the rights of holders of liens valid in and registered under the law of the State wherein such liens were created," and that such liens will be enforced in this state, under principles of comity, even as against subsequent purchasers or creditors in this state, without notice.
Moreover, we think that, even without applying the rule of comity here, the lien of GMAC must take priority over that of Vincent, since we cannot find that Vincent is an "innocent purchaser for value, without notice". This is so because the Legislature by Chapter 28184, Laws of Florida, Acts of 1953, now appearing as Section 319.27(3) (f), has provided that in order for a purchaser of a car with an out-of-state registration to be deemed an innocent purchaser, he must "obtain a telegram or statement in writing from the motor vehicle commissioner, or like officer, in the state of the current tag, to the effect that no lien does exist on said motor vehicle"; or, if facilities do not exist in that office for the recording of liens, then the purchaser "shall obtain a telegram or statement in writing from the recording officer of the city or county and state of the residence *781 of the seller as shown by the sworn statement, that no lien against said motor vehicle is of record in such county."
It will thus be seen that the Legislature has placed squarely upon the purchaser of an out-of-state car the burden of making inquiry of the proper officials of such other state as to whether there are any outstanding liens in such state against the automobile  and which, even in the absence of an express legislative direction, this court has held to be the duty of such purchaser under the circumstances shown here. McQueen v. M. & J. Finance Corp., Fla., supra, 59 So.2d 49. There still is not  as there never has been  any statutory duty on the Motor Vehicle Commissioner of this state to make such inquiry, so that a subsequent purchaser from the original purchaser in this state of an out-of-state car has no right to rely upon the Florida title certificate as to the existence vel non of an outstanding lien in the state from which the car has been brought into this state. And since the Florida certificate of title issued on a car with a previous out-of-state registration shows on its face that the car was previously registered in such other state, as required by Section 319.23(4), Florida Statutes 1953, F.S.A., such subsequent purchaser is put on notice that a lien may have attached to the car during its sojourn in that state. He is charged with knowledge of the provisions of Chapter 319, supra, so he must know that the title of his vendor will be defective unless the requirements of Section 319.27(3) (f), supra, have been met. The same thing is true of all subsequent purchasers in the line of title  they can all see, since it appears on the face of the Florida Title Certificate, that the Florida certificate of title was originally issued on an out-of-state car. Such subsequent purchaser may require his vendor to submit proof that he has investigated the lien situation in the other state and that there are no liens against the vehicle in such state, or he may make an independent investigation of his own. But if he relies on the representations of his vendor, and it turns out that his confidence has been misplaced, he cannot "escape the penalty for his own carelessness". McQueen v. M. & J. Finance Corp., 59 So.2d 49, 51.
For the reasons stated, the decree appealed from should be and it is hereby
Affirmed.
TERRELL, SEBRING and MATHEWS, JJ., concur.