100 So.2d 651 (1958)
William C. MAY, Appellant,
v.
CITIZENS NATIONAL BANK OF ORLANDO, a Florida Banking Corporation, and C.L. Hatchell, Appellees.
No. 129.
District Court of Appeal of Florida. Second District.
February 21, 1958.
Gladstone L. Kohloss, and Charles V. Silliman, Orlando, for appellant.
Arthur L. Steed of Steed & Steed, Orlando, for appellee C.L. Hatchell.
PER CURIAM.
This is an appeal from a final decree granting foreclosure of a chattel mortgage encumbering a motor vehicle. Only those facts necessary to a decision will be related.
One Harrelson purchased the automobile new and borrowed most of the purchase price from appellee bank; however, by mistake of the dealer, notation of the bank's intended chattel mortgage lien was omitted from the application for the original title certificate which was issued to Harrelson showing title in him free of encumbrance. Asked by the bank to turn over to them the original title certificate, Harrelson represented that he had mistakenly destroyed it and, at the bank's request, he applied for and was issued a "duplicate" certificate. Subsequently his stepfather, Hatchell, took over the car and the liability to the bank. The duplicate certificate was endorsed from Harrelson to Hatchell and the latter executed the chattel mortgage *652 herein sought to be foreclosed. The chattel mortgage lien was appropriately filed with the Motor Vehicle Commissioner. A new title certificate marked "duplicate" was issued, showing title in Hatchell and the lien of the bank's mortgage, and was held thereafter by the bank. Later while Hatchell was out of town, Harrelson, being permitted use of the car, resurrected the original certificate which showed title to be in him free of any lien, and sold the car and original certificate to a dealer. After two mesne transfers through dealers, the vehicle was purchased from a used car dealer by appellant May who, like the dealers through whom the car came to him, learned of the interests of the bank and Hatchell in the car only after the transaction was completed. All persons other than Harrelson dealt in good faith.
The Chancellor refused to follow the master's finding that the bank was negligent and should bear the loss for its failure to make certain that its lien was shown on the original application for a title certificate, and entered final decree ordering sale of the vehicle free of any interest of appellant therein. He accompanied the final decree with a memorandum opinion reading in part as follows:
"* * * The 1949 amendment, embodied in [F.S.A.] Sec. 319.27, abolishes the recording of motor vehicle liens on vehicles registered in this state and substituted therefor a procedure by which the notice of the lien against subsequent parties in interest is effected by noting the lien on the title certificate itself. This is accomplished through the office of the motor vehicle commissioner by the surrender of the existing certificate and reissue of a new certificate bearing the notation of the lien, delivered to the lienholder. It is observed that duplicate certificates, containing the current title information of all vehicles registered in this state, constitute the official records upon which the motor vehicle commissioner regulates the transfer and encumbrance of motor vehicle titles, even though constructive notice of recorded liens is abolished.
"Against this structure of the automobile title law, we must read [F.S.A.] Sec. 319.22 to arrive at its intent and purpose. Sec. 319.22 provides that the purchaser of a motor vehicle, whether from a dealer or not, shall not acquire a marketable title thereto until he shall have issued to him a title certificate. It is provided elsewhere that in cases of purchase from a dealer it is the responsibility of the dealer, not the purchaser, to have such certificate issued to his purchaser. It thus appears to be the express intention of Chapter 319 that the transfer of title to a purchaser from a dealer is not completed for the purpose of investing the purchaser with a valid title as against any prior claimant, until the old certificate has been cleared through the motor vehicle commissioner's records and any conflicting interests brought to light. [F.S.A.] Section 319.24 provides procedure for the prompt settlement of title controversies, and by providing for the withholding of issuance of new certificates until such controversies are resolved, affords effective control of automobile titles in the motor vehicle commissioner. Thus the titles and claims to motor vehicles, peculiarly the subject of fraud and theft, are given a measure of control and supervision apparently considered advisable by the legislature.
"Inasmuch as the law makes provision for the issuance of duplicate copies of title certificates, the possession of an original unencumbered certificate by a purported owner, dealer or not, does not allow absolute reliance on the seller's title for the purpose of purchasing it, prior to its clearance through the Motor Vehicle Commissioner in compliance with Sec. 319.22. A purchaser who parts with his money for a motor vehicle prior to the clearance of his *653 newly acquired title through the issuance of a certificate to him, is not a purchaser without notice of such defect of title that such clearance would reveal. Whether liens shown in the records of the motor vehicle commissioner are constructive notice or not, a compliance with the plain provisions of Sec. 319.22 would afford actual notice of claims of lien prior to acquisition or the perfecting of an adverse and superior title claim by the purchaser.
* * * * * *
"From the considerations expressed, it is my view that May's purchase never ripened into title assertable against Hatchell or against the bank's lien and its foreclosure."
It is clear from the record that May purchased the vehicle on the strength of its physical presence accompanied by an original Florida certificate of title showing no encumbrance; that no inquiry was made to the office of the motor vehicle commissioner; and that if such check had been made it would have revealed existence of the "duplicate" certificate showing title in Hatchell subject to the bank's encumbrance. Yet it is within these circumstances that appellant has brought this appeal, contending that he should be held to be a bona fide purchaser for value, without notice.
It must be clearly understood we are concerned here with a used automobile, on which a title certificate has been issued in this state and is outstanding, and not a new vehicle, as to which the statutes make specific provision. Neither are we dealing with the question of civil liability, which is also covered to some extent by statute.
It is not necessary to the disposition of this appeal to decide whether a person can or, as the Chancellor concluded, cannot become a bona fide purchaser of a used motor vehicle prior to his title's successful negotiation through the office of the motor vehicle commissioner and the issuance to him of a new title. It is sufficient to hold that the effect of our statutes is to make the duplicate certificates on file in said office, on which the current title information on motor vehicles is reflected, the official records concerning the title to motor vehicles in this state. It follows that at least without inquiry to said office, there being no other circumstances which might justify the absence of such inquiry, a person cannot achieve the status of a bona fide purchaser entitled to be freed of prior rights in a used motor vehicle in this state.
In at least four cases, the Supreme Court of Florida has considered the absence of an inquiry to the motor vehicle commissioner's office, in holding a purchaser to be bound by prior interests in a used vehicle brought into Florida from another state. McQueen v. M. & J. Finance Corp., Fla. 1952, 59 So.2d 49; Livingston v. National Shawmut Bank of Boston, Fla. 1952, 62 So.2d 13; Vincent v. General Motors Acceptance Corp., Fla. 1954, 75 So.2d 778; Clinger v. Reliable Discount Co., Fla. 1955, 80 So.2d 606. The absence of such inquiry in the transfer of a within-state title was noted in Dicks v. Colonial Finance Corp., Fla. 1956, 85 So.2d 874. Provision for such inquiries is made by statute, Section 319.25 (5) (b), Florida Statutes, F.S.A. The conclusion herein reached appears to be consistent with holdings in other states having similar statutes. See annotation, 18 A.L.R. 2d 813 et seq.
Since appellant relied solely on the face of the title certificate in purchasing the motor vehicle, and not upon such information as would have been produced by inquiry to the office of the motor vehicle commissioner, he is unable to attain a position superior to the interests of the appellees in the vehicle, and the decree must be affirmed without a consideration of the other points raised by him in the appeal.
The decree is affirmed.
ALLEN, Acting Chief Judge, and THORNAL and BARKER, A. JJ., concur.