### SINCLAIR REFINING CO. v. ROUSSEAU, et ux.
### No. 97901.

Circuit Court, Duval County.
October 14, 1958.

Louis Kurz, Jr. of Ragland, Kurz & Toole, Jacksonville, for plaintiff.

Jacquelin J. Daniel of Daniel & Daniel, Jacksonville, for Saint Marys Bank, intervenor.

WILLIAM H. MANESS, Circuit Judge.

Plaintiff, Sinclair Refining Co. , hereinafter referred to as "Sinclair," instituted this action to foreclose a chattel mortgage executed by Edward Henry Rousseau, Jr., and Catherine Beaty Rousseau (his wife), hereinafter referred to as "Mr." or "Mrs." Rousseau (as the case may be), by virtue of which Sinclair claims a first lien on a 1956 Chevrolet described therein and which has been attached in aid of foreclosure. A decree pro confesso was duly and properly entered against both Mr. and Mrs. Rousseau, and there is no dispute as to the amount or validity of Sinclair's claim and asserted lien as between Sinclair and said defendants. But before the cause was at issue, on proper petition, the Saint Marys State Bank, a Georgia corporation, hereinafter referred to as "the bank," was permitted to intervene and assert an alleged lien given it by Mr. Rousseau, which alleged lien it claims is superior to and prior to the lien claimed by Sinclair. An agreed statement of some facts was filed herein and certain testimony and documentary

evidence presented to the court in chambers, after which counsel for Sinclair and the bank submitted their contentions and authorities in letter form. From such, the court now finds as follows—

On September 12, 1956, Mr. and Mrs. Rousseau, who were then residents of the state of Georgia, living in Kingsland, while Mr. Rousseau was working in St. Marys, Georgia, purchased the 1956 Chevrolet in question in Jacksonville, Florida, new, from a new car dealer, and at the same time made application for a Florida license tag and a Florida certificate of title. A 1956 Florida license tag was put on the car "to drive it back to Georgia" but no Georgia tag was ever procured, and the Florida tag remained on the car until it was subsequently replaced by a 1957 tag.

On September 15, 1956, two days after purchase, Mr. Rousseau *only* executed and delivered to the bank an instrument commonly called a "Bill of Sale to Secure Debt," by which he obligated himself to pay $2,416.04 in 23 instalments and "to secure the payment of said indebtedness" the document further provided "I hereby bargain, sell, transfer, assign, set over and convey unto . . ." the bank the said 1956 Chevrolet. By a separate paragraph at the bottom of the instrument, under the heading "Title Certificate" and bearing a second signature, acknowledged before a notary public, Mr. Rousseau reiterated the sale of the 1956 Chevrolet to the bank to secure the debt. This document was duly recorded as required by Georgia law on September 19, 1956, but no effort was made to record anything in Florida anywhere.

Thereafter, on September 21, 1956, upon the above-mentioned application of September 12, 1956, the motor vehicle commissioner of Florida issued title certificate no. 4242865 to "Rousseau, E. H. and Catherine, 5765 College Lane, Jacksonville, Florida" covering the 1956 Chevrolet and showing nothing in the space on the certificate provided for listing lienholders.

Mr. and Mrs. Rousseau moved to Duval County, Florida, in January, 1957, and at that time had possession of the 1956 Chevrolet, still bearing the Florida license tag and the certificate of title issued by the Florida motor vehicle commissioner showing the description of the car, date of purchase and under "STATE PREV. REG." the word "NEW" and under the word "CTY" meaning "County" the figure "2" indicating "Duval," and still showing nothing under the space provided for lienholders. At about that time, or a few weeks before, Mr. Rousseau made application to Sinclair to become an operator of a Sinclair station and in order to qualify financially and otherwise gave certain references and financial data in which he listed the 1956 Chevrolet, offered a chattel mortgage thereon, but did not disclose the existence of any

lien or claim of lien on said automobile by anyone else. He did list a debt of $2,000 under "Notes and/or chattel mortgage given bank or other parties" but represented this item to be an unsecured note, and further, as shown by notes of conversation made by R. R. Boatright, Sinclair's representative, represented as an asset, "1956 Belaire Chev. (fully paid) 2167." Listed among the references was St. Marys State Bank, and in checking these, the vice president and cashier of the bank, Flem J. Hall, was contacted by telephone from Atlanta by Mr. Wilson of Sinclair and inquiry made as to Mr. Rousseau's credit, character, etc., but Mr. Hall did not tell Sinclair of the loan outstanding with Mr. Rousseau or their claim of lien on the 1956 Chevrolet to secure same and it does not appear that he was specifically asked about any such loan though Mr. Wilson did say Sinclair was going to take a chattel mortgage on an automobile.

On January 14, 1957, both Mr. and Mrs. Rousseau executed and delivered to Sinclair the instalment note and chattel mortgage, herein sought to be foreclosed, and at the same time delivered to Sinclair the Florida title certificate to the 1956 Chevrolet. The chattel mortgage, which covered other property not involved in this litigation, was duly recorded in Duval County but not in the office of the motor vehicle commissioner and said title certificate was retained in the files of Sinclair.

Mr. and Mrs. Rousseau defaulted in their obligations to Sinclair and this action was begun on February 28, 1958, and on that date a notice of lis pendens was filed in the office of the clerk of this court and a copy thereof served on the motor vehicle commissioner in Tallahassee on March 5, 1958. Sinclair had no notice of the bank's claim of lien until March 6, 1958, and the bank had no notice of Sinclair's claim of lien until March 7, 1958, on which date Sinclair caused the sheriff to attach the 1956 Chevrolet.

Counsel for the bank strongly contends that the sole question is whether or not this court will apply the rule of comity and give priority to the lien of a foreign creditor who fully complied with the laws of the state in which the lien was created over the lien of a subsequent creditor in this state who was without notice of the previous foreign lien. The two leading Florida cases that support this contention are Livingston v. National Shawmut Bank of Boston (1952), 62 So. 2d 13, and Vincent v. General Motors Acceptance Corp. (1954), 75 So. 2d 778, and unless there is a *material factual difference* in the case at bar, these two cases must control and the bank's claim of lien must be deemed first in priority.

In both of these cases, the rule of comity was applied to give priority to the lien created in the state where the car was originally

purchased, where there was no question of the creation of a valid lien under the law of such other state and where such car was subsequently brought to Florida where the lien held to be inferior was created. Furthermore, in these and other cases where the Florida lienholder has been denied relief in our courts it has usually been because such lienholder or purchaser had either not made timely inquiry of the Florida motor vehicle commissioner or had not diligently pursued the facts developed by such inquiry and brought his claim within the protective provisions of chapter 319.27 (3) (4) of the Florida Statutes, or both. See also McQueen v. M. & J. Finance Corp. (1952), 59 So. 2d 49.

In the case at bar neither the bank nor Sinclair made any inquiry of the motor vehicle commissioner and took no action to comply with the protective provisions of chapter 319.27 of Florida Statutes with respect to recording of liens until after this action was begun and Sinclair filed a copy of the lis pendens with the commissioner. Therefore, this law does not affect the rights of the contending parties and is of no assistance to the court in determining the priority of the two liens.

However, the provisions of chapter 319.22 (1) do seem to apply to the facts at bar. That section reads—

"319.22. *Transfer of title.*—

(1) Except as provided in sections 319.21 and 319.28, no person acquiring a motor vehicle from the owner thereof, whether such owner be a dealer or otherwise, hereafter shall acquire a marketable title in or to said motor vehicle until he, she or it shall have had issued to him, her or it a certificate of title to said motor vehicle; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate for said motor vehicle for a valuable consideration. Except as otherwise provided herein, no court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any such motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by and on a certificate of title duly issued, in accordance with the provisions of this law."

Considering the foregoing statute, and in light of the facts of this case, this court is of the opinion that there is a *material factual difference* between the case at bar and the Livingston and Vincent cases, supra, so as to preclude application of the doctrine of comity. At the time the bank made its loan to Mr. Rousseau, it had actual knowledge of the fact that the 1956 Chevrolet was purchased new in Jacksonville, Florida, and bore a 1956 license plate and was charged with knowledge of the laws of Florida respecting the necessity of a certificate of title (319.21 F. S.) in order to sell such motor vehicle, and that such a certificate had been applied

for and was outstanding and if not obtained from Rousseau might mislead others such as has subsequently developed, and of the necessity to acquire from Mr. Rousseau such certificate of title in order to obtain a title to or valid lien upon the 1956 Chevrolet (319.22 F. S.). Such neglect on the part of the bank in failing to obtain possession of the Florida certificate of title makes it mandatory on this court to refuse to recognize "the right, title, claim or interest . . ." of such bank under the provisions of the above-quoted statute.

In view of the foregoing, it is not necessary to discuss or decide the contention of Sinclair that the bank is estopped to assert the priority of its lien because of its failure to require delivery of the Florida certificate of title, failure to record its lien in Tallahassee, failure to obtain the signature of both Mr. and Mrs. Rousseau, failure to disclose its lien on the 1956 Chevrolet in talking with Mr. Wilson, and its alleged knowledge that Mr. Rousseau had removed the car to Florida. Suffice it to say, that the result achieved by the legislature in the enactment of section 319.22 (1), as construed herein, does operate to subordinate the rights of a lienholder, whether or not the lien is valid under the laws of the state where created, if such rights are asserted in and to a motor vehicle known by the lienor to have been first purchased and titled in Florida and which was not transferred, mortgaged or encumbered in accordance with the laws of Florida, and where, by reason thereof, a subsequent lien is created without notice or knowledge on the part of the subsequent lienor of any such prior lien or rights.

In reaching the above conclusions, the court is not overlooking the fact that any inquiry by the bank at the office of the motor vehicle commissioner in Tallahassee prior to the creation of its lien would not have disclosed other liens, nor the fact that Sinclair did not make such inquiry at the time its lien was created, because the court finds these facts immaterial and irrelevant under the circumstances of this case. It is important that Sinclair did obtain and keep in its possession the title certificate issued by the state of Florida to the motor vehicle in question, and that such title certificate gave no clue, which, if pursued, would have led to the discovery of the bank's lien and was otherwise valid on its face, and that Sinclair had no knowledge in fact, or reason to believe, that such motor vehicle had been previously transferred or encumbered.

Therefore, counsel for the plaintiff is directed to prepare a final decree adjudging Sinclair's lien to be first in priority and the lien of the bank to be subordinate and inferior thereto, in which this memorandum opinion may be incorporated by reference, and to present such proposed final decree to the court, after due notice to counsel for the intervenor.