## MOTORS INSURANCE CORP. v. HAMILTON.
No. 67955.

Civil Court of Record, Duval County.

October 29, 1962.

Boone & Guthrie, Jacksonville, for plaintiff.

Greene & Greene, Jacksonville, for defendant.

TYRIE A. BOYER, Judge.

This cause came on to be heard on the motions for summary judgments filed by the respective parties. No factual differences have been raised either in the pleadings, affidavits, depositions or oral arguments. The controversy appears to be concerned entirely with the controlling law. At the conclusion of the hearing and oral argument the court took the matter under advisement and agreed to postpone entry of an order until the attorneys for the respective parties had had an opportunity to submit authorities. Various authorities have been submitted, none of which appear to be "on all fours". The uncontroverted facts appear to be as follows—

The subject vehicle was sold by General Motors Corporation to Henry Susk Pontiac Co. on November 5, 1958, and an Illinois title certificate was issued to Henry Susk Pontiac Co. The title was transferred by Henry Susk Pontiac Co. to Walter A. Kummer on December 10, 1958. On December 18, 1959, Walter Kummer transferred the title back to Henry Susk Pontiac Co., who in turn reassigned to Grossinger Motors on February 4, 1960. On February 21, 1960, the title was assigned by Grossinger Motors to William Henry Faulkner. By assignment of title, sworn to and subscribed on January 11, 1961, William Henry Faulkner assigned said title to Motors Insurance Corporation, plaintiff herein. Following each transfer above deraigned a title certificate was duly issued by the appropriate officer or department of the state of Illinois to the assignee.

On December 3, 1960, while the title was reposed in William Henry Faulkner, the subject vehicle was stolen in Chicago, Illinois. The theft was duly reported to the Chicago Police Department. Faulkner was insured against theft by Motors Insurance Corporation, plaintiff herein, and in due course the insuror paid to the then owner of said vehicle, William Henry Faulkner, the agreed value of the vehicle and procured from him an assignment of title certificate; which assignment, as above set forth, was registered with the appropriate officer or department of the state of Illinois.

Motors Insurance Corporation has never sold or transferred its title to the subject vehicle.

In due course the plaintiff, Motors Insurance Corporation, discovered that said motor vehicle was in the state of Florida in possession of the defendant, Lester V. Hamilton, whereupon this replevin suit was instituted by the plaintiff and against said defendant.

The defendant, Lester V. Hamilton, had, prior to the commencement of this suit, obtained possession of said motor vehicle by purchase from one Barney Barfield. A certificate of title was issued to the defendant by the motor vehicle commissioner of the state of Florida, which certificate of title appears on its face to be valid and no liens are shown thereon. The file is devoid of any evidence as to the manner by which the vehicle or title thereto came into possession of defendant's seller, to-wit: Barney Barfield. The Florida title certificate, which is attached to one of the affidavits in the file, reveals that the previous registration was in Georgia. There is nothing in the file to indicate how the subject vehicle became registered in the state of Georgia prior to the issuance of the Florida certificate of title.

On the above stated set of facts each party has moved for summary judgment. The plaintiff urges that it stands in the same position as its grantor from whom the subject vehicle was stolen and that the successive sellers from the time the vehicle was stolen to the time it was purchased by the defendant could pass no better title than was had by the thief and therefore the title is yet reposed in the plaintiff and the plaintiff should accordingly prevail.

Defendant urges that inasmuch as he purchased the vehicle from Barney Barfield for valuable consideration and obtained from the motor vehicle commissioner of the state of Florida a title certificate, valid, on its face, a fortiori he is the owner and entitled to retain the vehicle.

The defendant cites as authority for his position, Florida Statutes 319.22 and 319.27 (3) f.

Florida Statute 319.27 (3), by its own terms, has no application to this case. That statute applies only to the purchase of motor vehicles "upon which no certificate of title has been issued in Florida". See Ferry Street Motor Sales, Inc. v. Municipal Auto Sales, Inc., Fla. App., 137 So. 2d 842, in which it is noted that the last cited statute applies only to transactions in which the vehicle "is sold here *without* a Florida title certificate having been issued." (Italics by the appellate court.) Said statute has no application for the further reason that it specifically refers to "any retain title contract, conditional bill of sale or chattel mortgage," none of which are we in this case concerned with.

The portion of Florida Statute 319.22, upon which defendant relies is the last sentence in sub-section (1) thereof in which it is provided—"*** no court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any such motor vehicle, hereinafter sold or disposed of, ***

unless evidenced by and on a certificate of title duly issued in accordance with the provisions of this law".

Defendant construes the above quoted language to mean that any owner of a vehicle registered in another state must, as a condition precedent to instituting a suit in this state involving that vehicle, obtain a Florida title certificate. Though perhaps the statute is subject to that interpretation, a reading of the entire statute reveals that such was not the intention of the legislature in passing the statute, and our appellate courts, in considering the specific language, have never placed such a construction thereon. (See Vincent v. General Motors Acceptance Corporation, S.C. Fla., 75 So. 2d 778, quoting with approval from Motor Inv. Co. v. Breslauer, 64 Cal. App. 230, 221 p. 700.)

The writer of this opinion has read a myriad of cases involving disputes pertaining to automobiles as between parties whose rights accrued in different states. The vast majority of those cases have involved factual situations in which the plaintiff was claiming a lien by virtue of a conditional bill of sale or mortgage executed in another state, which lien was not revealed by the Florida title certificate without giving information as to such pre-existing lien. Independent research has failed to reveal any case (and the parties have not cited any) involving a factual situation identical to that in the case at bar.

The court has the utmost sympathy for the unwary purchaser who has purchased on the strength of an apparently valid Florida title certificate showing no interest in anyone other than the immediate seller. It is interesting to note that Florida Statute 319.27 provides a manner in which a buyer may be an "innocent purchaser for value, without notice" as to a retain title contract, conditional bill of sale or chattel mortgage; however at no place does that statute, nor any other statute which has been found, provide a manner by which a purchaser of a motor vehicle can be deemed "an innocent purchaser for value, without notice" as to a pre-existing *title* in another. It is the candid opinion of the writer that a purchaser of a vehicle in the state of Florida without actual or constructive notice of a claim of another, which is not revealed by the title certificate duly and regularly issued by the motor vehicle commissioner of the state of Florida, should be allowed to rely thereon and should not be held to the duty of deraigning the title to the vehicle from its inception and searching the records in each state and county in which a prior owner might have resided in order to be assured of a clear and marketable title, however, the statutes do not so provide and courts—whether at the trial level or the appellate level—should refrain from making law, which is neither the court's duty nor right.

The Supreme Court of Florida held in Livingston v. Marshall Shawmut Bank of Boston, 62 So. 2d 13, that the lien of a bank holding a conditional sales contract executed in Maine and recorded in Maine but not noted on the Maine title certificate of registration (Maine did not require the notations of liens on certificates of registration) was superior to the rights of a purchaser in Florida who purchased, without knowledge of the lien, and who required from his seller a warranty that the title was free of encumbrances. In that case the Supreme Court specifically held that the purchaser was not a "bona fide purchaser", and further held—"There is nothing in chapter 319, Florida Statutes *** to indicate that the legislature intended to cut off the rights of holders of liens valid in and registered under the law of the state wherein such liens were created, as such rights had been previously enforced in this state under the rule of comity.***" (62 So. 2d 14)

In Vincent v. General Motors Acceptance Corporation, supra, the Supreme Court of Florida again considered a similar case in which the facts were as follows—one Powell purchased an automobile in Georgia under a conditional sales contract which was assigned to General Motors Acceptance Corporation. The contract was recorded in Georgia at Powell's place of residence as required by Georgia law. The Georgia certificate of registration obtained by Powell contained no notation of the conditional sales contract, as the law of that state requires none. Powell brought the car to Florida and sold it to one Lee without first having obtained a Florida title certificate. A Florida certificate of title was issued to Lee without any notation as to liens. Lee sold the car and assigned the certificate to a used car dealer who subsequently conveyed it to Vincent. The Florida certificate of title contained the notation that the car was previously registered in Georgia. G.M.A.C. brought suit to enforce its lien against the ultimate purchaser, Vincent, who defended on the ground that he was an innocent purchaser for value without notice. The Supreme Court specifically rejected that contention stating that the lien, duly recorded in accordance with the law of the state where made, is superior to the rights and claims of *innocent purchasers* subsequently acquired in another state to which the vehicle had been removed without the knowledge or consent of the lienor, and would be enforced in this state under the rule of comity. The Supreme Court thereupon quoted at length from Motor Inv. Co. v. Breslauer, supra, portions of which quotations are peculiarly applicable to the case at bar, to-wit—

"*** the principle underlying it [the rule] may analogized to that upon which the owner of property stolen from

him and taken or transported to another state may follow the thief into the latter state and reclaim or take possession of the pilfered goods or chattels wherever found. A state may, it is true, refuse to recognize the rule of comity in such cases; but, should it do so, it would become a party to every such fraudulent transaction. It is not going too far to say and to hold that it is preferable and more desirable that an innocent purchaser or incumbrancer of personal property brought into a state under such circumstances as those characterizing the transaction with which we are here concerned should suffer loss, which possibly his own improvidence or want of diligence has brought to him, than that the state should assume and maintain an attitude towards such transaction which would necessarily stigmatize it as an accessory after the fact to the fraud inhering therein."

The Supreme Court of Florida, in the last case above cited, further stated—

"*** We hold, then, that the provisions of chapter 319 were not intended to and do not 'cut off the rights of holders of liens valid in and registered under the law of the state wherein such liens were created,' and that such liens will be enforced in this state, under principles of comity, even as against subsequent purchasers or creditors in this state, without notice."

The court further held that there was no duty on the motor vehicle commissioner of this state to make inquiry when receiving an application to issue a Florida certificate on a vehicle theretofore registered out of state for the purpose of determining whether or not there are any outstanding liens in such other state, stating—"*** so that a subsequent purchaser from the original purchaser in this state of an out-of-state car has no right to rely upon the Florida title certificate as to the existence vel non of an outstanding lien in the state from which the car has been brought into this state."

The Supreme Court of Florida stated in Dicks v. Colonial Finance Corporation, 85 So. 2d 874, a case in which the factual situation was somewhat analogous to that in the case at bar that—"*** in the absence of some intervening principle of estoppel, no one can convey better title than he has, and conversely, in the absence of some such intervening right, one cannot claim a better title than he, in fact, receives." (85 So. 2d 876)

R. S. Evans Motors of Jacksonville, Inc. v. Hanson, Fla., 130 So. 2d 297, is more factually similar to the case at bar than any case found, in that case each party was claiming under titles represented by different Florida title certificates, rather than

one party claiming under a lien, as has been the situation in most cases examined. The court reiterated the rule announced by the Supreme Court last above quoted and further stated as follows— "*** Defendant's certificate of title, although issued last and imparting authenticity, does not accomplish more than a wild deed to real estate would accomplish. Chapter 319 of the Florida Statutes, under which the certificate was issued, does not purport to vest title where none exists."

In Ferry Street Motor Sales, Inc. v. Municipal Auto Sales, Inc., Fla., 137 So 2d 842, the innocent Florida buyer purchased on the basis of an apparently valid Florida title certificate which indicated that the vehicle's previous registration was Massachusetts. Before purchasing, he inquired of the motor vehicle commissioner of the state of Florida as to the condition of the title and received a telegram that there was no outstanding lien of record. He also wrote to the office of the city clerk of Boston, Massachusetts, to determine if there were any liens or encumbrances on the automobile and received a letter stating that "upon an examination of the records of mortgages of personal property, no mortgage was recorded under the name of Samuel Green" (the prior owner). Nevertheless the appellate court reversed a judgment for the defendant, innocent purchaser, and stated that the inquiry was *not* sufficient.

As before stated, both parties have moved for summary judgment, and in so doing have waived their rights to have the facts determined by a trier of the fact and authorized the trial court to determine the cause on the record before it (Goodman v. Strassburg, Fla., 139 So. 2d 163). And, though the case has been held under advisement for an inordinate period of time, no further affidavits or depositions have been filed nor proferred.

The defendant specifically denies in his answer that any demand was made upon him for return of the vehicle and the depositions of the plaintiff's representatives fail to demonstrate that there was any such demand made. Accordingly costs are not recoverable. (28 Fla. Jur., Replevin, §17 and cases there cited)

There is no evidence in the file to reveal damages for wrongful detention nor is there any support for the plaintiff's prayer for attorney's fees.

Upon consideration of the foregoing it is apparent that this court has no alternative but to enter judgment for the plaintiff and against the defendant. An appropriate judgment will be entered forthwith.